568 A.2d 1297

**Margaret H. BELL, Appellee,**

v.

**John F. BELL, Appellant.**

Superior Court of Pennsylvania.

Argued June 19, 1989.

Filed Jan. 22, 1990.

Ellen M. Viakley, Pittsburgh, for appellant.

Charles F. Perego, Pittsburgh, for appellee.

Before CIRILLO, President Judge, and CAVANAUGH, BROSKY, ROWLEY, MONTEMURO, BECK, TAMILIA, POPOVICH and JOHNSON, JJ.

BECK, Judge:

Husband-appellant and wife-appellee were divorced on February 11, 1982. Prior to divorce, the parties agreed to entry of a consent order providing for the payment of child support by husband to wife. This order was entered on November 30, 1981. On December 1, 1981, the parties executed a comprehensive agreement resolving their economic claims in anticipation of divorce. The Agreement provided, in pertinent part:

2. EFFECT OF DIVORCE DECREE

The parties agree that unless otherwise specifically provided herein, this Agreement shall continue in full force and effect after such time as a final decree in divorce may be entered with respect to the parties.

### 3. AGREEMENT TO BE INCORPORATED IN DIVORCE DECREE

The parties agree that the terms of this Agreement shall be incorporated into any divorce decree which may be entered with respect to them.

### 4. ENFORCEABILITY AND CONSIDERATION

If the contemplated divorce is not secured as agreed upon herein, this Agreement shall be null and void and of no further force and effect. If the contemplated divorce is granted and this Agreement is approved by the Court, and orders anticipating the enforcement of this Agreement are included in the decree granting a divorce between the parties, the Court shall maintain jurisdiction over the parties and the matters that are the subject of this Agreement.

. . . .

### 12. CHILD SUPPORT

Commencing on distribution date, Husband shall pay to Wife the sum of Four Hundred Eighty and 00/100 ($480.00) Dollars per month per child for the support of the children until emancipated.

### 16. HEALTH INSURANCE—CHILDREN

Husband shall provide Blue Cross/Blue Shield coverage or equivalent for the benefit of the child so long as he is obligated to contribute to their support pursuant to the provisions of this Agreement. In the event that Wife returns to work and has Blue Cross/Blue Shield or equivalent coverage, Wife shall provide such coverage for the benefit of the child concurrently with Husband's coverage.

. . . .

### 17. CUSTODY AND VISITATION

The parties agree that custody of the said child John Harry Bell, shall be with Wife. Husband shall have partial custody .... Visitation shall be open upon proper notice. ... The terms of Custody and Visitation are

subject to review by the Court in accordance with the Laws of the Commonwealth of Pennsylvania.

26. NO WAIVER OF DEFAULT

This Agreement shall remain in full force and effect unless and until terminated under and pursuant to the terms of this Agreement.

The parties were divorced on February 11, 1982. The divorce decree stated that the Agreement "is made a part hereof".

In 1987, husband petitioned for a reduction in child support on the ground that wife had become employed. The trial court denied the requested relief by order dated February 12, 1988. Husband appeals.

Husband argues that both the Agreement and the divorce decree evidence a clear intent by the parties that the Agreement would merge into the decree, thus becoming an order of court providing for child support which would be modifiable downward upon a showing of changed circumstances.

We disagree. Although husband has properly identified the crucial question as being what the parties intended as to the modifiability of their Agreement, we do not concur in his interpretation of the Agreement and decree.

In our opinion in the companion to this case, *D'Huy v. D'Huy*, 390 Pa.Super. 509, 568 A.2d 1289 (1990) (en banc), we reiterated that the guiding principle in determining whether a settlement agreement between divorcing parties should survive the entry of their divorce decree or, alternatively, be considered merged into the decree and subject to modification as a court order, is that the intent of the parties on this issue should govern. *Id.*, 390 Pa.Superior Ct. at 515, 568 A.2d at 1292 (citing *Sonder v. Sonder*, 378 Pa.Super. 474, 549 A.2d 155 (1988)). Thus, in *D'Huy* we held that where the parties to a settlement agreement have clearly and unambiguously expressed in their agreement an intent that their agreement will survive the entry of the divorce decree, and yet the decree itself says that the agreement is incorporated into the decree, the agreement

survives and is not merged. It remains an enforceable contract, not subject to unilateral modification as a court order.[1]

Applying this principle to the instant facts, we have no difficulty in concluding that the parties intended the Agreement to survive their divorce and that the child support provision would not be modifiable downward on a showing of changed circumstances like those alleged by husband. This intent is unambiguously expressed in the various provisions quoted above, both when read separately and in the context of the entire Agreement. The parties agreed that the Agreement was their entire agreement, intended to be the final and binding resolution of all economic claims between them at present and in the future. It specifically states that it shall "continue in full force and effect after ... [the] final decree in divorce" and will "remain in full force and effect unless and until terminated under and pursuant to the terms of this Agreement." The child support provision contains its own termination provision. The support obligation of husband as provided in the Agreement is to terminate only upon emancipation of the children.[2]

Reading the Agreement as a whole, we further find evidence that where the parties wished to permit court modification of their Agreement, they specifically so stated. For example, as to custody and visitation, the parties expressly agreed that those terms would be subject to review by the court under the laws of this Commonwealth. There is no such language relative to child support. Moreover, the Agreement contemplated that wife might return to work. If she did, the parties agreed that she would provide medical coverage for the parties' child to the extent that she

1. We do not reach the question of whether the amendments to the Divorce Code concerning merger/incorporation, effective February 12, 1988, should be retroactively applied to this case. Although we requested supplemental briefing on this issue to the court en banc, on further consideration we find that since neither party raised the issue on appeal, this case is an inappropriate vehicle for deciding such an important issue.

2. We note that although the Agreement refers to "children" at various places, the parties have only one child.

had coverage through her employment. There is no indication that the parties also intended husband's support obligation to be modifiable upon wife's employment, as it might be if the Agreement was subject to modification by the court.

Standing against all of the foregoing evidence that the parties did not intend to permit court modification there is only the language of both the Agreement and the divorce decree providing for incorporation of the Agreement into the decree. However, the parties' intent in agreeing to this is also clear. By incorporation the parties intended only that the Agreement would remain enforceable by the court after divorce. This is the only reasonable interpretation to be accorded to paragraph 4, quoted above, which provides that if the parties are divorced and "orders anticipating the enforcement of this Agreement are included in the decree", i.e. if the decree incorporates the Agreement, then the court shall retain jurisdiction over the Agreement.[3]

We find no ambiguity. The Agreement survives as an enforceable contract. Thus, the trial court did not err in refusing modification downward of husband's support obligation.

Affirmed.

Beck, J.'s majority Opinion is joined by CIRILLO, President Judge, and CAVANAUGH and ROWLEY, JJ.

TAMILIA, J., files a concurring statement.

BROSKY, J., files a dissenting opinion and is joined by POPOVICH, J.

---

**3.** Husband also argues that the divorce decree constitutes a modification of the Agreement making the latter modifiable by the court. This argument may be summarily dismissed. The decree cannot be construed as a modification of the Agreement simply because it does not change any term of the Agreement. The decree is perfectly consistent with the Agreement—both say that the Agreement is incorporated into the decree. We hold that, under the circumstances of this case, incorporation does not result in merger.

MONTEMURO, J., files a dissenting opinion and is joined by JOHNSON, J.

JOHNSON, J., files a dissenting opinion and is joined by MONTEMURO, J.

TAMILIA, Judge, concurring.

I concur in the result and would find that this case, as *D'Huy v. D'Huy*, 390 Pa.Super. 509, 568 A.2d 1289 (Dissenting Statement in Support of Remand, Tamilia, J., 1990), was improvidently granted and would remand it to the panel with instructions that it be affirmed in compliance with *Sonder v. Sonder*, 378 Pa.Super. 474, 549 A.2d 155 (1988).

BROSKY, Judge, dissenting.

What has troubled me since the emergence of disputes and appeals regarding the ever increasing number of agreements like the one presented here is the conclusion that seems almost automatically reached upon a finding that the agreement was meant to survive the entry of a divorce decree, this conclusion being that a specification regarding support is thus rendered non-modifiable simply by its inclusion in the agreement. I don't believe the courts should be so quick to conclude that the support obligation is rendered non-modifiable by inclusion in a surviving agreement.

The majority indicates that the governing factor in the determination is intent of the parties *as to modification*. (Majority Opinion, p. 530.) In fact, the majority states:

Applying this principle to the instant facts, we have no difficulty in concluding that the parties intended the Agreement to survive their divorce and that the child support provision would not be modifiable downward on a showing of changed circumstances.

I can agree with the majority that the parties likely intended that the agreement be in force after the divorce. The rather easy conclusion reached regarding modifiability comes as a surprise to me, especially when my reading of the clause in question reveals absolutely no mention whatsoever of modifiability.

The clause neither expressly calls for, nor expressly rejects modifiability. Yet, in this contractual climate, the majority states, rather boldly I believe, that "[t]his intent [non-modifiability] is unambiguously expressed in the various provisions quoted above, both when read separately and in the context of the entire agreement." Perhaps this is what is meant when it is said that what is crystal clear to one is opaque to another.

When parties embark upon settling economic claims by agreement they are, more than anything else, substituting arms length negotiation for litigation in court. By negotiation they can derive a settlement they can tolerate without subjecting themselves to the potential risk of a far less desirable award of the court. Certainly, there is benefit in negotiation, to both the payor and payee of support.

It escapes me why it should automatically be concluded that when parties sit down to negotiate the economic issues in lieu of litigation they intend to materially alter the nature of the claim being negotiated. That is, support obligations are generally modifiable upon a showing of changed circumstances. If the parties sit down to negotiate an appropriate sum for support why is it automatically assumed that they wish to change the modifiable nature of the obligation? Isn't it more likely that they have the same generally accepted concept of support in mind and are merely negotiating an acceptable support obligation rather than accepting the risk of an adverse award by the court, or perhaps, are attempting to limit the litigation costs, which, as we are all aware, can amount to substantial sums rather quickly.

Courts appear to routinely conclude that the negotiated sum cannot be modified unless explicitly stated so in the agreement, even though the more readily conceived concept of support is that it is a modifiable obligation. This is the more readily conceived concept of support if for no other reason than that is what it generally is in common experience, unless of course, the modifiable nature is bargained away. This approach is, therefore, very biased against the party agreeing to pay support.

Bias can be seen in this very case. Although, the clause says absolutely nothing about modifiability, the majority concludes that it is *unambiguously* non-modifiable. I believe this conclusion is suspect for several reasons. First of all, the majority finds this unambiguous intent in part, from the absence of modification language, even though it is difficult to conclude, on a logical level, that the absence of language on modifiability indicates a positive intent to have a non-modifiable obligation. It seems rather absurd to assert that parties would choose to express a *conscious intent* to provide a non-modifiable obligation through a mechanism of including language in a non-related clause and excluding it in the clause of import.

If the parties had a true conscious intent to establish a non-modifiable obligation it would seem that they would have indicated so explicitly, rather than relating this through some convoluted inclusion/exclusion approach. This would seem even more likely as the subject agreement became more comprehensive, for then there would be even greater reason to assume that if the parties possessed such an intent it would have been included in the document. Rather, the absence of the language more probably indicates that it was not given a great deal of thought either way. Of course, if modifiability was not really within the contemplation of the parties at all, then we have another question or issue altogether and it would be patently incorrect to contend that the intent was unambiguously expressed.

Secondly, when one considers the very significant difference between classifying the support obligation modifiable or non-modifiable, it becomes even more suspect that the parties would indicate their intent to have a non-modifiable obligation by simply neglecting to include such language in the clause in question. The majority indicates that intent can be deduced from the failure to include a modification provision in the support clause when it is considered that comments regarding court review are included in the custody and visitation clause. However, the mere fact that an

issue was contemplated as to one aspect of the agreement does not necessarily mean that it was contemplated as to another aspect of the agreement. There are many things going on in the lives of those going through divorce proceedings which could lead to distraction or, perhaps, disrupt the normal thought processes. Furthermore, as already discussed above, it is logically faulty to infer positive intent from a non-act. I look to the same circumstance and wonder why, if the parties had truly contemplated the issue and had a positive intent on the matter, the parties did not express it in the support clause when they did elsewhere in the agreement.

It seems to me that if they took the trouble to express their intent on court review or modifiability as to one aspect of the agreement, custody and visitation, they would do so as to another aspect of the agreement, support, as well. Assuming, of course, that it was their intent to do so. Consequently, I find it more plausible that the absence of modification language in the support clause signifies a lack of consideration by the parties of the modification issue in the support context than a conscious understanding of the parties that the obligation would be non-modifiable.

Returning to the point that modifiability or non-modifiability of the obligation is a significant issue, and can have drastic consequences to the individual assuming the obligation, I am further skeptical that appellant would have knowingly and gratuitously agreed to a non-modifiable obligation without gaining something in return. If the obligation is deemed non-modifiable, appellant would have been agreeing to an obligation beyond that which could have been imposed upon him by law. It is logical to assume that he would not have done such a potentially risky act without gaining something in return. However, the agreement does not explicitly indicate that he received anything in return for such a concession and it would likely require parole evidence to establish that he did.

Thirdly, the majority's attempts to divine intent from the parties usage of terms such as merger and incorporation is

likewise unconvincing simply because up until just very recently this very court had been struggling with the meaning and effect of these terms. It is my view that nobody, including the members of the bar or the courts, have really understood the significance of these terms, if for no other reason than because there was no consensus opinion on their effect. This is the very reason several of these cases have been considered by this court sitting en banc. I find it extremely unlikely that the attorneys, much less the parties, completely understood what significance this terminology would be given or signified.

This brings me to what I feel are the key points in this case. First, I suspect that in many of these cases where the language is silent as to modifiability there has, in fact, been no conscious contemplation or negotiation of the point by the parties. This, I believe, is a reasonably inferred conclusion from the fact that the agreement is silent on such a potentially very important issue. Further, I believe that my colleagues in the majority, if put to the task, would likely concede this point. After all, their own opinion, when all is said and done, does not really find an explicit intent on modification, their conclusion is reached through inference and deduction.

Second, we need to establish how these clauses should be dealt with in light of the fact that, in all probability, there has been either no contemplation or negotiation of the modification issue. Third, and perhaps more importantly, it would seem manifestly unfair to construe the obligation as non-modifiable unless it was, in fact, knowingly agreed to.

A change of circumstances can transform an affordable support obligation into a tremendous financial burden, and a finding of non-modifiability can transform an equitable obligation into a fast lane to financial ruin. Particularly when it is considered that court ordered support obligations are modifiable under appropriate circumstances, I do not believe non-modifiable obligations should be imposed by judicial construction of a separation agreement, but only upon a finding that it was knowingly and voluntarily as-

sumed or bargained for. Otherwise, we are simply imposing an unconscionable term upon an unsuspecting party to the agreement. This, I fear, may be what has been transpiring, as courts seem to have been inclined to view the obligation as non-modifiable simply because it has been expressed in a written contract as opposed to a court order. Of course, now that the recent *en banc* decisions have established that intent of the parties is to be the deciding factor, we can concentrate on that issue. I believe we must be careful not to read in intent where it is not present. I would be reluctant to find a form of implied or implicit intent favoring non-modifiability.

In light of the above discussion, I would be considerably more comfortable in considering agreements silent on modification ambiguous as to that point and allowing parole evidence on this issue, than I would be in engaging in a mind reading demonstration and pretending that certain inclusions and/or exclusions of language in other clauses somehow signify an intent as to modifiability. In this context, evidence of whether or not modification was contemplated, discussed or bargained for could be properly considered. If, in consideration of parole evidence, it is found that, in fact, the support obligation was understood to be a non-modifiable obligation then it could be given that effect.

Where it appears or is determined that modifiability of a support obligation was neither discussed nor negotiated or where it appears that non-modifiability was not consciously agreed to, I would construe such a clause as modifiable since support is generally a modifiable obligation and thus, the more reasonable nature to impute to the agreement as the parties understanding.[1]

----

1. Of course, if there was not an express understanding as to a certain matter, contract law calls for the "reasonable expectation" of the parties to prevail. I would contend that in similar circumstances as those presented here, and in the absence of countervailing evidence, the reasonable expectation of the parties should be concluded to be a modifiable obligation because that is the general nature of support obligations in common experience, and, thus, the most reasonable expectation to impute as the parties understanding.

Thus, in the present case, I would remand for the allowance of parole evidence on the issue of modifiability and a redetermination of the issue in light of this opinion.

POPOVICH, J., joins in this dissenting opinion.

MONTEMURO, Judge, dissenting:

I join Judge Johnson's dissenting opinion. I write separately to elaborate on why Section 401.1(b) of the Divorce Code should be applied to this case.[1]

Section 401.1(b) provides that "[a] provision of an agreement regarding child support, visitation or custody shall be subject to modification by the court upon a showing of changed circumstances." The 1988 amendments to the Divorce Code, including Section 401.1(b), became effective immediately upon passage on February 12, 1988.

Section 401.1(b) affects the jurisdiction of a court to modify an agreement pertaining to child support, visitation, or custody. The existence of an agreement is a necessary condition for application of Section 401.1(b). There is no evidence of legislative intent that the date of the child support agreement shall bear on the modifiability of the agreement. Section 401.1(b) contains no language restricting its application to agreements executed after the effective date of the amendment.

Further, in discussing the comprehensive 1988 amendments to the Divorce Code prior to the vote, members of the House of Representatives indicated their understanding that the amendments would be applied to all cases pending before the courts. In response to a proposal by Representative Hagarty that the new reduced 2–year waiting period for a "unilateral" divorce should not be retroactively applied but instead should be applied only to final separations beginning after the effective date of the amendments, the following comments were made:

1. For the reasons stated by Judge Johnson, I believe that the issue of the applicability of Section 401.1(b) is properly before this Court.

Mr. LASHINGER [in opposition to the Hagarty amendment]: The issue that is in front of us now is whether we are going to take the provisions of SB 409 [the 1988 amendments], which in some cases are procedural changes and some are substantive changes, and have them apply to all of the divorces that are in the mill, where a complaint has been filed.

What we did in the Judiciary Committee was to make the decision, as we made the decision in 1979 in this General Assembly under the 1980 Divorce Code, that parties should be prepared, if a complaint has been filed in a divorce action, to face the realities of what the Divorce Code will hold at that time. We made a decision to say that it should apply to all of those cases that are not just filed subsequent to this but also to those cases that are pending....

Let me point out what I think might be the most important thing, however. You are telling that person who has filed the complaint that all of the other provisions—gifts, permanent alimony, all of the other items that we substantively changed—apply. So in most cases, if a man has filed a complaint, he is going to be bound ... the petitioner will have filed the complaint, the new alimony section will apply to that male petitioner, the new equitable distribution sections will apply to that petitioner; however, what Representative Hagarty is saying is the separation period should not apply....

Mr. FREIND [in support of the Hagarty amendment]: I think what you have to remember is that the rest of the bill that is retroactive is really dealing only in the financial area....

*Legislative Journal–House*, January 26, 1988, p. 68–70. While I recognize that, as a general rule, remarks made by individual legislators on the floor of the House or Senate should not be relied upon in ascertaining the meaning of a statute, *see McCormick v. Columbus Conveyer Company*, 522 Pa. 520, 564 A.2d 907 (1989), I refer to these remarks to show a common understanding among our state legislators

that the provisions of the Divorce Code are to be applied in both pending and future cases.[2]

It would be unreasonable to restrict the applicability of Section 401.1(b) to those child support agreements executed after the effective date of the amendment. In enacting Section 401.1(b), our legislature intended to alleviate the confusion in the courts regarding the circumstances in which a child support agreement may be modified. Section 401.1(b) provides a uniform rule to resolve this uncertainty, and, presumably, to ensure that matters regarding children are dealt with in an equitable fashion. To delay application of this clear rule until child-related agreements executed after February 12, 1988 are sought to be modified would prolong the inequity the legislature sought to remedy. *Cf. Bacchetta v. Bacchetta*, 498 Pa. 227, 445 A.2d 1194 (1982) (holding that definition of marital property set forth in Section 401(e) of the Divorce Code includes property acquired before the effective date of the Code). All of those parties who executed agreements prior to February 12, 1988, and the children who are the subject of the agreements, would be deprived of the benefit of Section 401.1(b).

In light of the remedial purposes of the amendment and the stated objectives of the Divorce Code to "[e]ffectuate economic justice between parties who are divorced" and to "insure a fair and just determination ... of their property rights," I interpret Section 401.1(b) to apply to child support agreements executed both before and after the effective date of the amendment.

I would vacate the order of the trial court and remand this matter for further proceedings consistent with Section 401.1(b) of the Divorce Code.

JOHNSON, J., joins in this dissenting opinion.

---

**2.** There was no argument or question that the amendments were to be applied immediately in all cases, pending and future. The very reason that Rep. Hagarty proposed her provision which would have made the new 2–year waiting period applicable only in future cases was to avoid this general rule of retroactive application of the Divorce Code amendments.

JOHNSON, Judge, dissenting.

The majority refuses to consider the applicability of the 1988 amendments to the Divorce Code, citing as the reason for not reaching their applicability the fact that "neither party raised the issue on appeal" and the assertion that "this case is an inappropriate vehicle for deciding such an important issue." I must dissent.

This court entered an order on May 11, 1989 which listed this case for reargument before an en banc court. The sole issue which would have warranted the attention of the en banc court was whether section 401.1 of the Divorce Code, 23 P.S. § 401.1 (as amended by the Act of February 12, 1988, P.L. 66, No. 13, § 2) (Act No. 13) should be retroactively applied to the agreement at issue here. Since the majority cites no authority for its present belief that this is an inappropriate vehicle for considering the retroactive effect of § 401.1, I find myself unable to join their position.

Since the filing of the notice of appeal in this case on March 17, 1988, opinions have been filed in this court which cast doubt upon the interpretation and applicability of newly enacted § 401.1. *See, Knorr v. Knorr,* 380 Pa.Super. 11, 550 A.2d 1338 (1988); *Sonder v. Sonder,* 378 Pa.Super. 474, 549 A.2d 155 (1988); *Dechter v. Kaskey,* 379 Pa.Super. 45, 549 A.2d 588 (1988); *Hutchinson v. Hutchinson,* 379 Pa.Super, 247, 549 A.2d 999 (1988); *Dolan v. Dolan,* 378 Pa.Super. 321, 548 A.2d 632 (1988). Given the divergence in interpretation of whether the new section applies retroactively, the acceptance by the full court of the panel's recommendation to grant en banc review in this case continues to be sound.

In their supplemental briefs, both parties to this appeal addressed on the merits the applicability of § 401.1 to the present controversy. The issue is properly before this court for review. *Merriam v. Cedarbrook Realty, Inc.,* 266 Pa.Super. 252, 260, n. 8, 404 A.2d 398, 402, n. 8 (1978). There is some reason to believe that the legislative passage of newly enacted § 401.1 resulted from a mutual desire by significant, responsible segments of the family practice bar

and by legislators to remove some of the confusion and uncertainty which had arisen in the area of marital agreements and their modifiability. I believe that a strong public interest in securing clarity and predictability in this area further confirms the wisdom initially shown by our court in granting en banc review and overshadows any doubts concerning issue preservation or preclusion. *Cf., Reilly by Reilly v. Southeastern Pennsylvania Transportation,* 507 Pa. 204, 224, 489 A.2d 1291, 1301 (1985); *Murphy v. Bradley,* 113 Pa.Cmwlth. 387, 391–392, 537 A.2d 917, 919 (1988).

I therefore must dissent from the majority's refusal to consider the applicability and retroactivity of 23 P.S. § 401.1.

The substantive issue on this appeal is whether an agreement relating to child support and custody is subject to modification upon a showing of changed circumstances. For me, the answer is found in § 401.1 of the Divorce Code, which provides:

Section 401.1   Effect of agreement between parties

(a) A party to an agreement regarding matters within the jurisdiction of the court under this act, whether or not the agreement has been merged or incorporated into the decree, may utilize a remedy or sanction set forth in this act to enforce the agreement to the same extent as though the agreement had been an order of the court except as provided to the contrary in the agreement.

(b) *A provision of an agreement regarding child support, visitation or custody shall be subject to modification by the court upon a showing of changed circumstances.* (Emphasis added].

The majority revisits the question of whether incorporation of the settlement agreement into a divorce decree results in the agreement losing its independent effect, concludes on the basis of the parties' intent that in this case it does not, and finds the agreement "not subject to unilateral modification as a court order." At 299. Judge Brosky, in dissent, raises troublesome questions regarding our past attempts at resolving these issues and concludes that this

matter should be returned to the trial court for allowance of parole evidence on the issue of modifiability. One need only review the careful analysis of prior case law undertaken by the most distinguished trial judge, the Honorable Eugene Strassburger, to appreciate the timeliness and need for Act No. 13.

The legislature has answered the question which has given this court so much trouble and caused so much consternation within the family practice bar. Act No. 13 renders further judicial analysis of prior court decisions in this area inappropriate and unnecessary. The learned trial judge could not have been aware of Act No. 13 when he rendered his decision, since it was adopted on the very day that the defendant/appellant's exceptions were dismissed. I have no difficulty in finding Act No. 13 applicable to this appeal. Since, under § 401.1(b), provisions regarding child support and custody are modifiable upon a showing of changed circumstances, I would vacate the order of the trial court and remand this matter for further proceedings consistent with Section 401.1(b) of the Divorce Code.

MONTEMURO, J., joins in this dissenting opinion.