595 A.2d 115

**Joanne BRANGS**

v.

**Douglas BRANGS, Appellant.**

Superior Court of Pennsylvania.

Argued March 5, 1991.

Filed July 23, 1991.

Dagmar W. Wolf, Lansdale, for appellant.

Lizabeth A. Auspitz, Fort Washington, for appellee.

Before BECK, POPOVICH and HOFFMAN, JJ.

BECK, Judge:

This case involves the often visited question of the modifiability of a property settlement agreement which has been incorporated into but not merged with a final decree of divorce. In particular, the instant case raises the important question of whether the child support provisions in a settlement agreement executed prior to February 12, 1988, are subject to downward modification by the court upon a showing of changed circumstances.

Effective February 12, 1988, section 401.1(b) of the Divorce Code provides that: "A provision of an agreement

regarding child support, visitation or custody shall be subject to modification by the court upon a showing of changed circumstances." 23 Pa.Cons.Stat.Ann. § 401.1(b) (Purdon Supp.1990), *repealed by* 1990, Dec. 19, P.L. 1240, No. 206, § 6, effective in 90 days, *re-enacted as* 23 Pa.Cons.Stat. Ann. § 3105(b).[1] The resolution of this case hinges on the applicability of section 401.1(b) to the child support provisions of the agreement at issue here, which was executed in 1987. We hold that section 401.1(b) cannot be applied retroactively to allow husband to obtain a reduction of child support payments which he is obligated to pay under a valid, unmerged, enforceable, pre-amendment property settlement agreement. Therefore, we affirm.

Joanna Carr Brangs (wife) and Douglas H. Brangs (husband) were married in 1979 and separated in 1987. They have three children. On August 14, 1987, wife and husband executed a property settlement agreement which resolved all economic issues pertinent to the dissolution of marriage, including child support. The provision on child support in the agreement stated that: "Husband shall pay the sum of $150.00 per week for the support of the three (3) minor children, Peter Brangs, Adam Brangs and Jillian Brangs." The agreement further provided that, upon entry of a divorce decree, the agreement and its provisions would be incorporated into the judgment for divorce and would survive the decree and not merge into it. A divorce decree

---

**1.** The Divorce Code (23 P.S. §§ 101 to 801) was repealed by Act of Dec. 19, 1990, and re-enacted as Part IV of the Domestic Relations Code, 1990 Dec. 19, P.L. 1240, No. 206 § 2. *See* 23 Pa.Cons.Stat.Ann. §§ 3101–3707 (Purdon Supp.1991). The amendment formerly codified as 23 Pa.Cons.Stat.Ann. § 401.1(b) is now 23 Pa.Cons.Stat.Ann. § 3105(b). The provision is unchanged. We note that 1 Pa.Cons.Stat. Ann. § 1962 (Purdon Supp.1991) provides:

§ 1962—Repeal and reenactment

Whenever a statute is repealed and its provisions are at the same time reenacted in the same or substantially the same terms by the repealing statute, the earlier statute shall be construed as continued in active operation. All rights and liabilities incurred under such earlier statute are preserved and may be enforced.

Since the foregoing is what occurred here, our interpretation and conclusions regarding former section 401.1(b) (now section 3105(b)) are unaffected by the repeal and reenactment.

entered thereafter on September 22, 1987, likewise incorporated the agreement but stated that the agreement survived and did not merge.

In November, 1987, wife filed a petition for contempt claiming that husband had failed to make the agreed-upon child support payments. Husband counterclaimed alleging, *inter alia*, various violations by wife under the agreement. On February 12, 1988, the Honorable Marjorie C. Lawrence of the Montgomery County Court of Common Pleas entered an order which found husband in contempt for failing to adhere to the terms of child support in the property settlement agreement. The court ordered that husband make up arrearages and that he continue to pay the $150.00 per week agreed to in the property settlement agreement. The trial court also found wife in contempt for failing to make a $1000.00 payment to husband pursuant to the agreement and ordered wife to comply.

Two years later, in February 1990, husband filed a petition to modify the decree and reduce child support, based on an alleged change of circumstances. Thereafter, wife filed a petition alleging that husband continued to be in contempt of his child support obligations under the agreement and under Judge Lawrence's order which implemented the agreement's terms. On May 15, the Honorable Albert R. Subers denied husband's petition to modify and found, instead, that husband was in default of his child support payments under the agreement, in the amount of $7,405.00. The trial court found that the 1988 amendment to the Divorce Code which allows modification of child support provisions of private agreements upon a showing of change of circumstances is not applicable to the instant agreement executed prior to the effective date of the amendment. This appeal followed. Husband makes the following arguments. First, he contends that the 1988 amendments to the Divorce Code were intended by the legislature to be given retroactive application to private agreements executed prior to their enactment. Further he argues that such retroac-

tive affect would not offend due process.[2] Husband also argues that, under the circumstances of this case, modification downward of husband's child support obligation would not constitute retroactive application of the statute since his petition to modify was filed after the amendments were effective. Finally, husband claims that the property settlement agreement was always intended by the parties to be modifiable and that this alleged intent controls.[3]

With respect to husband's first claim regarding the retroactive application of section 401.1(b) to child support provisions of private agreements, we note that some judges of this court have expressed non-precedential views on the question.[4] However, a recent case is binding precedent. Albeit in a footnote, *Nessa v. Nessa,* 399 Pa.Super. 59, 65 n. 2, 581 A.2d 674, 676 n. 2 (1990) held that "this agreement is not affected by the amendment to the Divorce Code, § 401.-

2. Since we conclude, as discussed *infra,* that the amendment at issue was not intended to operate retroactively, we do not address appellant's due process argument.

3. We find no merit in husband's argument that the child support provisions in the property settlement agreement were intended by the parties to be modifiable. The agreement unambiguously expressed the intent of the parties that the agreement survive the entry of a divorce decree and not merge into it. The agreement specifically provided that it represented the parties' "complete understanding regarding ... support" and that it was a "final and complete settlement of all property rights between them". In addition, the agreement stated that it "contain[ed] all the terms, conditions and provisions relating to the matters herein set forth and there are no outstanding modifying verbal understandings, agreements or arrangements whatsoever with relation thereto". Finally, husband raised similar arguments challenging the terms of the agreement in 1987 before Judge Lawrence. The court, however, found husband in contempt of an enforceable, valid agreement and ordered him to comply with the child support obligations undertaken therein.

4. The issue of the applicability of the amendment on private agreements for child support executed prior to Feb. 12, 1988, has been addressed by members of this court in dissenting opinions of cases which have failed either to tackle or to resolve this issue. *See Bell v. Bell,* 390 Pa.Super. 526, 568 A.2d 1297 (1990) (en banc) (plurality opinion) (Montemuro and Johnson, JJ., dissenting); *DeMatteis v. DeMatteis,* 399 Pa.Super. 421, 582 A.2d 666 (1990) (Tamilia, J., concurring and dissenting); *Ballestrino v. Ballestrino,* 400 Pa.Super. 237, 583 A.2d 474 (1990) (Johnson, J., dissenting).

1(b), (c), added 1988, Feb. 12, P.L. 66, No. 13, as the agreement predated the amendment." *Nessa* involved facts substantially the same as those in the instant case. The parties in *Nessa* had executed a property settlement agreement in 1983 which subsequently was incorporated but not merged into a divorce decree the same year. In 1989, husband's circumstances in *Nessa* took a dramatic and unfortunate downturn attributable to illness. Husband petitioned the court to modify his support obligations and the trial court denied his petition, citing the agreement as a bar to downward modification. This court affirmed and held that, since the agreement contained a specific provision for incorporation and not merger, the agreement survived as a contract and was not modifiable by the court. *Id.* This conclusion was reached in *Nessa* despite the fact that husband's filing of the petition to modify, and the change of circumstances upon which it was based, did not occur until after the effective date of section 401.1. Moreover, as noted above, the court held that the pre-amendment agreement was not modifiable based on 401.1 because the agreement predated its enactment. In our view, we are bound by *Nessa*. It dictates the result here. We write to enlarge and clarify what we believe was a fair and correct holding in *Nessa*.

Basic principles of statutory construction govern our inquiry into the applicability of new legislation to pre-existing transactions. There is a well-settled presumption against retroactive application of statutes affecting substantive rights. This presumption is legislatively mandated in 1 Pa.Cons.Stat.Ann. § 1926 (Purdon Supp.1991), which provides: "No statute shall [be] construed to be retroactive unless clearly and manifestly so intended by the General Assembly." [5] Our courts have repeatedly interpreted this

---

5. In addition, the legislature has specifically addressed amendatory statutes as follows:

Whenever a section or part of a statute is amended, the amendment shall be construed as merging into the original statute, become a part thereof, and replace the part amended, and the remainder of the original statute and the amendment shall be read together and

provision as creating a strong presumption of prospective statutory application only, absent clear language to the contrary. *See, e.g., Rudolph Rosa, Inc. v. Latrobe Brewing Co.,* 347 Pa.Super. 551, 500 A.2d 1194 (1985); *Green v. Pennsylvania Public Utility Com'n,* 81 Pa.Cmwlth. 55, 473 A.2d 209, *affirmed* 507 Pa. 430, 490 A.2d 806 (1985); *Krenzelak v. Krenzelak,* 503 Pa. 373, 469 A.2d 987 (1983).

The presumption against retroactive application of statutes and amendments thereto is particularly strong when application of the statute would interfere with existing contractual obligations. "Where the application of a statute would make a substantive change in the rights and obligations of the parties, it is presumed that the legislature intended its provisions to have no application to contracts existing prior to the effective date of the law." *Rudolph Rosa, Inc. v. Latrobe Brewing Co.,* 347 Pa.Super. at 562, 500 A.2d at 1200. *See also Rupert v. Policemen's R. & P. Fund,* 387 Pa. 627, 632, 129 A.2d 487, 489 (1957); *Krenzelak v. Krenzelak,* 503 Pa. at 379–380, 469 A.2d at 990, *citing Commonwealth v. Greenawalt,* 347 Pa. 510, 512, 32 A.2d 757, 758 (1943).

In contrast to statutes which affect substantive rights, such as existing contractual obligations, statutes which aptly can be characterized as remedial, curative or affecting procedural matters may operate retroactively. Thus, it is a basic precept of statutory construction that laws which create remedies, affect procedural avenues, or clarify existing rights, all may escape the presumption against retrospective application of legislation. *See, e.g., Smith v. Fenner,* 399 Pa. 633, 641, 161 A.2d 150, 154 (1960) ("Retrospective laws may be supported when they impair no contract and disturb no vested right, but only vary remedies, cure

viewed as one statute passed at one time; but the portions of the statute which were not altered by the amendment shall be construed as effective from the time of their original enactment, *and the new provisions shall be construed as effective only from the date when the amendment became effective.*

1 Pa.Cons.Stat.Ann. § 1953 (Purdon Supp.1991) (emphasis added). *See also S.D. Richman Sons, Inc. v. Com., Board of Finance and Revenue,* 53 Pa.Cmwlth. 110, 416 A.2d 1161 (1980).

defects in proceedings otherwise fair, and do not vary existing obligations contrary to their situation when entered into and when prosecuted."); 2 SUTHERLAND, STATUTORY CONSTRUCTION § 41.09 (Sands 4th ed. 1986).[6]

Finally, in order to invoke the presumption against retroactivity it is necessary to determine whether the proposed application of the enactment at issue would actually be "retroactive". A retroactive law is "one which relates back to and gives a previous transaction a legal effect different from that which it had under the law in effect when it transpired". *Com., Dept. of Labor and Industry, Bureau of Employment Sec. v. Pennsylvania Engineering Corp.*, 54 Pa.Cmwlth. 376, 380, 421 A.2d 521, 523 (1980). However, our courts have held that *"[w]here ... no vested right or contractual obligation is involved,* an act is not retroactively construed when applied to a condition existing on its effective date even though the condition results from events which occurred prior to that date". *Creighan v. Pittsburgh*, 389 Pa. 569, 575, 132 A.2d 867, 871 (1957) (emphasis added).

With these principles in mind, we turn to the statutory amendment at issue here. In our view, the threshold inquiry is whether downward modification of husband's child support obligation pursuant to section 401.1(b) would constitute retroactive operation of that amendment. We conclude that it would. For the amendment to permit a reduction of

**6.** Pursuant to this principle, a panel of this court recently held that the enforcement provisions of the 1988 amendments to the Divorce Code (23 Pa.Stat.Ann. 401.1(a) (Purdon Supp.1991)) are applicable to pre–1988 private agreements. *Jackson v. Culp*, 400 Pa.Super. 519, 583 A.2d 1236 (1990). In *Jackson,* the court reasoned that there was "no anomaly in applying the enforcement procedures provided by the 1988 Amendment to a pre–1988 [marital settlement agreement] while refusing to apply other provisions of the Amendment which would involve a change in the obligation of the parties." This is so because "[t]he amendment neither adds to nor subtracts from the substantive rights of the parties under their MSA; rather, it merely provides an additional procedural vehicle for the enforcement of their respective rights under their MSA." *Id.,* 400 Pa.Superior Ct. at 523, 583 A.2d at 1238. The *Jackson* court concluded: "The 1988 Amendment to the Divorce Code allows *enforcement but not modification* of an un-

the child support obligation fixed in an unmerged, surviving and enforceable property settlement agreement, it would certainly have to give "a previous transaction a legal effect different from that which it had under the law in effect when it transpired". *Com., Dept. of Labor and Industry, Bureau of Employment Security, supra,* 54 Pa.Cmwlth. at 380, 421 A.2d at 523. Under the law in effect when the property settlement agreement here was executed, a child support provision in an incorporated but unmerged private agreement was not subject to downward modification by the court upon a showing of change of circumstances. A long line of decisions established the "legal effect" of support provisions in such cases. *Brown v. Hall,* 495 Pa. 635, 435 A.2d 859 (1981); *Millstein v. Millstein,* 311 Pa.Super. 495, 457 A.2d 1291 (1983); *Madnick v. Madnick,* 339 Pa.Super. 130, 488 A.2d 344 (1985); *Trumpp v. Trumpp,* 351 Pa.Super. 205, 505 A.2d 601 (1985); *McGough v. McGough,* 361 Pa.Super. 391, 522 A.2d 638 (1987). By contracting as they did in 1987, the parties here evidenced their intent that their agreement would "survive" the entry of a divorce decree and that the court would thereby have power to enforce the terms and provisions of the agreement but not modify them. In fact, this is precisely what Judge Lawrence did in the instant case in her order of February 12, 1988. In that order the court enforced the mutually agreed upon terms of the contract, implementing them only and refusing to modify them, despite an asserted change of circumstances by husband. *See Sonder v. Sonder,* 378 Pa.Super. 474, 540–541 n. 3, 549 A.2d 155, 188–189 n. 3 (1988) (Beck, J., concurring and dissenting). Such was the legal effect of the contractual obligation entered into by these parties in 1987. Permitting the court unilaterally to modify that obligation in a manner inconsistent with the terms of the agreement, based upon the 1988 amendment, certainly would constitute retroactive operation of section 401.1(b).

Appellant husband's argument to the contrary is wholly meritless. He contends that his petition to modify was filed

merged MSA under the Code." *Id.* (citations omitted; emphasis in original). We agree.

after the effective date of the amendment and that application of section 401.1(b) to reduce his support obligation would merely be a determination of his present obligations. Husband argues that the existence of the contract was just a condition or fact which came into existence prior to the enactment and merely constitutes a predicate for application of the amendment. First, the same situation existed in *Nessa* and this court refused to modify the private agreement despite the enactment of section 401.1(b). More importantly, the argument is fundamentally flawed. The very statement of statutory construction upon which husband relies to make this argument, i.e., that a statute does not operate retroactively merely because some facts or conditions upon which its application depends came into existence before its enactment, is expressly limited to cases "where no vested right or contractual obligation is involved".[7] The private agreement at issue here is not a mere antecedent event—it is the contractual obligation being altered by operation of the statute. Such an application is a clear example of retroactivity.[8]

7. *See Creighan v. Pittsburgh,* 389 Pa. 569, 575, 132 A.2d 867, 870 (1957) (statute which provided compensation in specified circumstances to fireman disabled from tuberculosis is applicable to a claim for disability arising from tuberculosis which occurred prior to the effective date of the act and which continued to exist when the act came into effect).

8. In contrast, in a recent case, this court found that application of 401.1(c) which prohibits modification of alimony *et al.* provisions of private agreements, absent a specific provision in the contract to the contrary, did not constitute a retroactive application of the statute. *DeMatteis v. DeMatteis,* 399 Pa.Super. 421, 434, 582 A.2d 666, 672 (1990). The court reasoned that section 401.1(c) did not interfere with existing contractual obligations or antecedent rights because the statute actually acted to protect pre-existing rights of the parties to the contract. The court stated:

> The statute, which prohibits modification of the voluntary agreements of parties to a divorce action, actually acts to protect such pre-existing rights and obligations. The statute is therefore not retroactive and we may apply the provisions of section 401.1(c) to the parties' agreement, which was a condition existing on the effective date of the 1988 Divorce Code amendments.

Based on the above reasoning, we do not find *DeMatteis* inconsistent with our conclusions today.

Moreover, it is clear that the amendment at issue affects substantive rights and cannot be considered merely remedial, curative or procedural. As we discussed above, the impact of section 401.1(b), if applied to the instant private agreement, would be to allow modification of a contractual obligation heretofore unmodifiable under previous law. While the line between "procedural" and "substantive" enactments may occasionally be difficult to fix, we can think of no clearer example of substantive change than empowering the court to remake the terms of an enforceable contract where no such power existed until the amendment was enacted. Although appellant argues that the amendment is "remedial", we believe he misconstrues the term. While the amendment undoubtedly was enacted to rectify a perceived problem in the interplay between court ordered support and support through private agreement, this fact alone does not make the amendment at issue here "remedial". In this sense, all legislation is "remedial" in that it attempts to correct a perceived societal problem through the exercise of valid police powers. "Remedial", however, is a term of art and has particular significance in the area of retroactivity. Thus, Black's Law Dictionary defines "remedial laws or statutes" as follows:

Legislation providing means or method whereby causes of action may be effectuated, wrongs redressed and relief obtained is "remedial"..... Those statutes which pertain to or affect a remedy, as distinguished from those which affect or modify a substantive right or duty.

BLACK'S LAW DICTIONARY 1162–1163 (5th ed. 1979).

No doubt section 401.1(b) is aimed at achieving a salutary purpose.[9] In doing so, however, it has given courts the

9. Relying on Judge Montemuro's dissent in a recent *en banc* decision, husband argues that section 401.1(b) was a "remedial measure". In his dissenting opinion in *Bell v. Bell,* 390 Pa.Super. 526, 540, 568 A.2d 1297, 1304 (1990) (en banc) (Montemuro, J., dissenting), Judge Montemuro stated that "[i]n enacting Section 401.1(b), our legislature intended to alleviate the confusion in the courts regarding the circumstances in which a child support agreement may be modified". Assuming there was such confusion and assuming further that the alleviation of the confusion was the legislature's purpose, these facts

power to alter contractual agreements by permitting modification of mutually agreed upon terms in the specified areas of child support, custody and visitation. Such a law is substantive in nature.

Having found the amendment at issue to affect substantive rights and obligations, we presume, as we must, that it was intended to apply prospectively only. In order to overcome this presumption against retroactivity, the legislature must have expressed in clear and unequivocal terms that it intended the disputed amendment to operate retrospectively. We find no such language in the enactment nor has appellant cited us to any. Appellant argues that "there is no language in the Act which limits the application of Section 401.1 to only those agreements which came into being after the effective date". Appellant is correct but this statement argues against retroactive application of the amendment, not for it. A statute affecting substantive rights is construed to act prospectively only, *absent clear language to the contrary.* The language and intent to the contrary must be "so clear as to preclude all questions as to the intention of the legislature". *Commonwealth v. Repplier Coal Co.,* 348 Pa. 372, 381, 35 A.2d 319, 324 (1944) (citation omitted).

We reject appellant's suggestion that the retrospective intent of the legislature can be found in the fact that the amendment provided that it became effective immediately. As this court has stressed before, such language alone does not manifest retroactive intent on the part of the legislature which "knows well how to provide that a statute should be applied retrospectively or prospectively" in order to make its intent plain. *S.D. Richman Sons, Inc. v. Com., Board of Finance and Revenue,* 53 Pa.Cmwlth. at 114, 416 A.2d at 1163. *See also Commonwealth v. Repplier Coal Co., supra.* We conclude that, with respect to the modifiability of child support provisions of unmerged private agreements, the legislature intended prospective application only.

alone do not create a "remedial statute" where, as here, the statute operates on pre-existing contractual obligations.

Since there is no language whatsoever evidencing retrospective intent in the amendment itself, we look to the whole statute to determine whether retroactive operation can be inferred from the act in its entirety. *See Wilson v. Central Penn Industries, Inc.*, 306 Pa.Super. 146, 452 A.2d 257 (1982) (to determine legislative intent, sections of the statute must be read together and construed with reference to whole). On the whole, in enacting the 1980 Divorce Code, the legislature provided that marital agreements executed prior thereto would not be affected by the Act. Section 103 of the original Divorce Code provided in part that: "This act shall not affect any marital agreement executed prior to the effective date of this act or any amendment or modification thereto." [10] When the 1988 amendments were enacted they merged with and became part of the original divorce code but, according to statute and settled law of statutory construction, the new provisions "shall be construed as effective only from the date when the amendment became effective". 1 Pa.Cons.Stat. Ann. § 1953 (Purdon Supp.1991); *S.D. Richman Sons, Inc. v. Com., Board of Finance and Revenue, supra.* The only provision specifically addressing the impact of the Divorce Code on previously executed marital settlement agreements provides that the act shall not affect the obligations undertaken thereunder. Nothing in the amendment convinces us that, where settled contractual obligations would be altered, the amendment was intended to operate retroactively.

Despite appellant's argument, we do not believe that this conclusion offends the general social policies underlying the Divorce Code in general and the 1988 amendment in particular. We conclude only that the amendment may not be applied retroactively to permit the court unilaterally to reduce a child support obligation in contravention of the

**10.** See Section 5 of Act 1990, Dec. 19, P.L. 1240, No. 206, which now provides, in pertinent part:

The provisions of 23 Pa.C.S. Pt. IV [relating to divorce] shall not affect any marital agreement executed prior to the effective date of the Divorce Code of 1980 or any amendment or modification thereto.

clear intent of the parties at the time they entered into a counselled, valid and mutually agreed upon contract. We note further that, with respect to the equitable treatment of children of divorce, the law has always provided that where the best interests of the child so require, child support obligations pursuant to agreement may be increased to meet a child's needs. *See McGough v. McGough, supra,* 361 Pa.Super. 391, 392–393 n. 1, 522 A.2d at 639 n. 1; *Millstein v. Millstein, supra.* Clearly, parties executing settlement agreements subsequent to the enactment of section 401.1(b) of the 1988 amendment to the Divorce Code, cannot, in light of the statute, enter into non-modifiable agreements for child support. On the other hand, absent express and manifest legislative intent to the contrary, the rights and obligations of the parties cannot be altered by retroactive operation of statute to achieve a result certainly not intended by them and not permitted by law at the time they assumed their obligations. The United States Supreme Court long ago underscored the inherent equity of the presumption against retroactivity affecting substantive rights:

> [T]he first rule of construction is that legislation must be considered as addressed to the future, not to the past. The rule is one of obvious justice, and prevents the assignment of a quality or effect to acts or conduct which they did not have or did not contemplate when they were performed.

*Union Pacific R.R. Co. v. Laramie Stock Yards Co.,* 231 U.S. 190, 199, 34 S.Ct. 101, 102, 58 L.Ed. 179 (1913).

Order affirmed.