571 A.2d 1046

**Charlotte M. LIPSCHUTZ and Robin Lipschutz and Jill Lipschutz, Appellees,**

v.

**Steven LIPSCHUTZ, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 6, 1989.

Filed Jan. 19, 1990.

Reargument Denied March 29, 1990.

Wendy Glazer, Philadelphia, for appellant.

Steven N. Yermish, Philadelphia, for appellees.

Before McEWEN, OLSZEWSKI and TAMILIA, JJ.

OLSZEWSKI, Judge:

This is an appeal from the judgment entered by the Court of Common Pleas of Philadelphia County directing specific performance of a separation agreement in favor of appellees and against appellant. On appeal, appellant raises the following issues:

(1) Are [appellees'] claims barred by the doctrines of estoppel, laches, waiver, modification, and the applicable statute of limitations?

(2) Does [appellees'] complaint fail to set forth a valid cause of action in that the agreement is not subject to specific performance and a judgment could not be entered pursuant to said agreement?

(3) Can the agreement be modified pursuant to the amendments of the Divorce Code?

(4) Are appellees entitled to payment of college tuition and related expenses if they did not comply with conditions precedent in the agreement and did not meet their burden of proof regarding same?

(5) Are appellees entitled to specific performance of the provisions of the agreement regarding expenses of camp, medical insurance, life insurance, college fees, or psychological expenses, or a judgment for past expenses for same?

(6) Should the action have been dismissed since [appellant's] preliminary objections were sustained?

Brief of appellant at 3.   For the following reasons, we affirm.

This case arose as an action in equity in which appellees, Charlotte M. Lipschutz and her daughters, Robin and Jill, sought specific performance of a property settlement agreement entered into between Charlotte and appellant, Steven Lipschutz.   Charlotte and Stephen Lipschutz were married in May of 1964.   Robin and Jill were the only children born of the marriage; Robin on February 19, 1968, and Jill on December 17, 1969.   In early December of 1975, Charlotte and Steven separated;  and on December 9, both parties executed a property settlement agreement.   This agreement, twenty-five pages in length, required appellant to provide *inter alia,* child support amounting to $250.00 per week, health and life insurance coverage, summer camp tuition, college tuition, and room and board while the children were at school.   On December 26, 1975, Charlotte and Steven were divorced pursuant to a decree entered by the Court of Common Pleas of Montgomery County.   The terms of the property settlement agreement were not incorporated into this decree.

On May 26, 1982, pursuant to a petition for support filed by appellee Charlotte Lipschutz, the Honorable Gregory Lagakos of the Court of Common Pleas of Philadelphia County entered an order of support requiring appellant to make payments of $100.00 per week under the jurisdiction of the Family Court of Philadelphia County.   Ms. Lipschutz requested such an order due to infrequent child support payments by appellant.   Both sides agree that appellant has made payments under this order on a regular basis.

On May 9, 1985, appellee Charlotte Lipschutz along with her daughters, Robin and Jill, filed the instant action in equity in the Court of Common Pleas of Montgomery County seeking specific performance of the property settlement agreement.   The complaint sought money damages for past

due support, college tuition and specific performance of that portion of the agreement relating to the payment of future college tuition and related expenses. The complaint also sought past due sums for summer camp tuition and extraordinary medical and dental expenses. Appellant filed preliminary objections to the complaint, which included an objection to venue and a count for a demurrer. On October 23, 1986, the Honorable Lawrence A. Brown sustained the objection as to venue and transferred the case to the Court of Common Pleas of Philadelphia County. Thereafter, appellant filed an answer and new matter to the complaint, raising the affirmative defenses of laches, estoppel, and the applicable statute of limitations.

Trial of this matter commenced on February 2, 1988, before the Honorable Charles Wright and lasted until February 3. By order dated April 13, 1988, the court awarded appellees specific performance of the agreement and judgment in their favor against appellant in the amount of $49,600.53 for past due sums and expenses.[1] Appellant filed timely post-trial motions which were denied by the

1. The order provided as follows:
   1. The Property Settlement Agreement entered into by Plaintiff Charlotte Lipschutz and Defendant Steven M. Lipschutz on December 9, 1975 is a valid and enforceable Agreement.
   2. Defendant Steven M. Lipschutz shall perform all of his obligations pursuant to the aforesaid Property Settlement Agreement prospectively, specifically to wit:
   (a) Defendant shall provide unencumbered life insurance in an amount no less than $75,000 for the benefit of his daughters, Robin and Jill Lipschutz and shall provide proof of payment of premiums thereon to Plaintiff Charlotte Lipschutz.
   (b) Defendant shall pay support for his daughters Robin and Jill Lipschutz, to Plaintiff Charlotte Lipschutz, in the amount of $125.00 per week ($62.50 per child) until Robin Lipschutz graduates from Emory University (or is otherwise emancipated pursuant to the Agreement), and $62.50 per week thereafter until Jill Lipschutz graduates from the University of Colorado (or is otherwise emancipated pursuant to the Agreement);
   (c) Defendant shall provide Plaintiffs Robin and Jill Lipschutz with health insurance coverage under Blue Cross/Blue Shield Major Medical, and shall further provide proof of premium payments thereon to Plaintiff Charlotte Lipschutz;
   (d) Defendant shall pay all extraordinary medical and dental expenses incurred by Robin and Jill Lipschutz not covered under

court on January 4, 1989. After the order of April 13, 1988 was reduced to judgment, appellant filed the instant appeal.

We first discuss appellant's contention that the property settlement agreement entered into by the parties is not subject to specific performance nor is reducible to judgment. Appellant submits that the agreement in the case at bar was merged into the support order of May 26, 1982. We disagree.

■ A property settlement agreement containing support provisions is enforceable by utilizing the same rules of law used in determining the validity of contracts if: it is a

the aforesaid Blue Cross/Blue Shield, Major Medical health insurance coverage, immediately upon receipt of bills;

(e) Defendant shall pay for all college tuition, room and board, books, supplies and fees for Plaintiffs Robin and Jill Lipschutz immediately upon receipt of bills.

3. Defendant Steven Lipschutz shall pay to Plaintiff Charlotte Lipschutz the sum of $49,600.53, which sum represents the following:

(a) Past due child support arrearages from May 26, 1982 owing under the Property Settlement Agreement, minus support payments made by the Defendant in the amount of $100.00 per week, said total sum being $38,175.00;

(b) Summer camp tuitions for Jill and Robin Lipschutz, said sum being $5,400.00;

(c) An extraordinary medical expense paid by Plaintiff Charlotte Lipschutz for Plaintiff Jill Lipschutz to 191 Laboratories, said sum being $102.40;

(d) An extraordinary dental expense paid by Plaintiff Charlotte Lipschutz for Plaintiff Jill Lipschutz to Dr. Sidney Wagman, said sum being $100.00;

(e) Costs of psychological counseling for Jill and Robin Lipschutz paid by Plaintiff Charlotte Lipschutz to Merrily Karpel, Ph.D., said sum being $1,152.00;

(f) College tuition and fees for Robin Lipschutz for Fall Semester 1986, said sum being $4,206.05;

(g) Payments for college books for Jill Lipschutz, said sum being $126.08;

(h) Financial aid application fees for both Robin and Jill Lipschutz, said sum being $45.50;

(i) Pre-college scholastic aptitude testing fees for both Robin and Jill Lipschutz, said sum being $148.50;

(j) College application fees for both Robin and Jill Lipschutz, said sum being $145.00.

4. Defendant Steven Lipschutz shall pay the outstanding dental bill of $164.00 to Howard Rosenberg, D.D.S., for extraordinary dental expense incurred for treatment upon Jill Lipschutz.

Reproduced record at 226a–228a.

detailed agreement covering all aspects of the economic relationship of the parties; it is not one-sided; both spouses are adequately counseled; the amount of support is not inadequate; and the agreement does not merge into a divorce decree or a court order. *Brown v. Hall,* 495 Pa. 635, 435 A.2d 859 (1981); *Sonder v. Sonder,* 378 Pa.Super. 474, 549 A.2d 155 (1988) (*en banc*); *McGough v. McGough,* 361 Pa.Super. 391, 522 A.2d 638 (1987); *Wertz v. Anderson,* 352 Pa.Super. 572, 508 A.2d 1218 (1986); *Millstein v. Millstein,* 311 Pa.Super. 495, 457 A.2d 1291 (1983). Instantly, neither party is attacking the validity of the agreement at the time it was entered. In addition, both parties acknowledge that the agreement was not incorporated or merged into the divorce decree. Thus, our only inquiry is whether the child support provisions of the agreement merged with the support order of May 26, 1982.

Whether merger occurs depends upon the intentions of the parties, which are generally determined by examining the terms of the settlement agreement. *Madnick v. Madnick,* 339 Pa.Super. 130, 488 A.2d 344 (1985); *Millstein v. Millstein, supra.* This determination is one for the trier of fact. *Wertz v. Anderson, supra.* Here, the agreement expressly provides:

This Agreement shall remain in full force and effect unless and until it is terminated either by mutual written consent of both parties, or to the extent it is appropriately terminated by the death of either party under the terms of this Agreement. The failure of either party to insist upon strict performance of any of the provisions of this Agreement shall not be construed as a waiver of any subsequent default of the same or similar nature. In the event that the marriage of the parties hereto is terminated by divorce, this Agreement shall nevertheless remain in full force and effect, and shall survive such decree and shall not in any way be affected thereby, except as provided for herein.

Reproduced record at 266a–267a.

■ In the case at bar, the trial court found that the settlement agreement survived the order of support dated

May 26, 1982. We agree. In so doing, we find nothing in that order which would indicate the termination of the support provisions of the property settlement agreement. Nor do we find any writing properly of this record to this effect.[2] Under these circumstances, it is clear that the provisions with regard to termination of the property settlement agreement have not been met.

Nevertheless, appellant contends that the intentions of the parties to merge the property settlement agreement into the support order of 1982 was clearly expressed by Charlotte Lipschutz's filing of the support complaint; by her failure to take exception to any provisions of said order; and by her acceptance of Mr. Lipschutz's payments. We disagree.

In *Dechter v. Kaskey*, 379 Pa.Super. 45, 49, 549 A.2d 588, 590 (1988) (*en banc*), considered at the same time and in conjunction with *Sonder v. Sonder, supra*, this Court had occasion to discuss the effect of a support order on a property settlement agreement. We stated:

> Pursuant to *Sonder*, we held both agreements and support Orders under certain circumstances could be given independent effect. Obviously, double recovery cannot be allowed on both the agreement and the support Order. To the extent the agreement is not completely satisfied by giving credit for the amount paid pursuant to the support Order, a debt is accumulated which may be recovered in an action of assumpsit or in equity. However, as we stated in *Sonder*, the enforcement remedies are not those pursuant to the support laws, therefore, attachment of the person and wage attachment are not permissible. In this respect, by retaining the validity of the agreement, we do not offend *Millstein v. Millstein*,

---

**2.** Appellant points to a stipulation between the parties allegedly entered into subsequent to the support order in which he claims the necessary writing was established to terminate the agreement. This writing was never entered into evidence at trial; thus, we do not consider it. Moreover, even had the document been properly made a part of this record, nothing in the stipulation expressly indicates a termination of the agreement, nor a merger into the support order. Therefore, in any event, this stipulation is of no moment.

311 Pa.Super. 495, 457 A.2d 1291 (1983) (an agreement for child support may not be reduced by the court, although an Order to increase support is permissible when circumstances warrant) and *Brown v. Hall,* 495 Pa.Super. 635, 435 A.2d 859 (1981) (unless an agreement is merged into the divorce decree, it may not be modified by the court).

Utilizing the above language, a panel of this Court in *Knorr v. Knorr,* 380 Pa.Super. 11, 550 A.2d 1338 (1988), held that court can modify its order of support entered after the execution of a property settlement agreement. In that case, we were presented with a set of factual circumstances almost identical to the case *sub judice.* In *Knorr,* the parties entered into a property settlement agreement prior to the entry of their divorce decree. The agreement contained language providing that it would be incorporated into the decree but was not to merge with it. A short time after entry of the decree, the wife filed a complaint for support. As a result, a court order was entered by consent of the parties providing that the husband pay support for his children in an amount equal to that contained in the property settlement agreement. Later, a petition to increase the order was filed by the wife which was countered by husband's cross-petition to reduce. Upon motion of the wife, the trial court summarily dismissed husband's petition on the grounds that the support order was not subject to reduction below the amount set by the parties' agreement. Husband appealed.

In reversing the trial court's summary disposition of husband's petition, we held that husband was entitled to have his petition to reduce support considered on the merits. In so doing, we examined the interrelation of property settlement agreements and support orders utilizing the reasoning of *Sonder* and *Dechter.* Implicit in this decision, we found that the subsequent court order did not supercede the property settlement agreement; rather, both were intact and enforceable in their own ways. Instantly, as in *Dechter* and *Knorr,* the fact that Charlotte Lipschutz sought other means by which to enforce Steven Lipschutz's

support obligations does not mean, absent express confirmation otherwise, that the provisions of the property settlement agreement have merged into the support order.[3] Because such confirmation was lacking in this case, we agree with the trial court that appellees had the right to seek specific performance of the property settlement agreement for the amounts requested.

Next, appellant contends that even if appellees could properly rely on the property settlement agreement in the instant action, the complaint must fail based upon the affirmative defenses of laches, the applicable statute of limitations, estoppel, waiver and modification. Appellant argues that the bringing of the instant action ten years after the date of the agreement, coupled with the intervening support order of May 26, 1982, precludes the relief requested by appellee. We disagree.

It is well-settled in this jurisdiction that the doctrine of laches is inapplicable in an action to enforce a continuing contractual obligation. *Kay v. Kay,* 460 Pa. 680, 334 A.2d 585 (1975). Moreover, the burden of proof with respect to the doctrine is upon the party asserting the defense; in order to meet this burden, the party alleging the delay must demonstrate prejudice. *Id.* Here, the court found that the property settlement agreement amounted to a continuing contractual obligation on the part of appellant, thus precluding the defense of laches. In addition, the court stated that appellant offered no evidence to establish that he was prejudiced by any delay in the filing of this action. As the record reflects this to be the case, we are in agreement with the trial court's assessment of this defense.

Turning to the statute of limitations, it is axiomatic that, for an action in equity, the applicable statute of limitations is used only as a frame of reference to evaluate

---

**3.** *See also Trumpp v. Trumpp,* 351 Pa.Super. 205, 505 A.2d 601 (1985) (actions of wife in filing two petitions for support without asserting the applicability of a valid property settlement agreement could not be construed as a waiver of her rights under agreement absent express written confirmation otherwise).

any purported delay in support of a claim of laches. *Kay, supra.* Here, save for expenses for summer camp tuition, appellees expressly waived any claim to support prior to the May 26, 1982 support order. Thus, applying the applicable statute of limitations for an alleged breach of contract, four years, the instant action was not untimely as of its filing date on May 9, 1985. While the summer camp expense was incurred more than four years prior to the filing of the instant action, inasmuch as it amounts to only a fraction of the claim, we find no error to the court's award. Accordingly, we are in agreement with the trial court that no inexcusable delay was present in the filing of the instant action.

■ Next, appellant maintains that appellees should be equitably and judicially estopped from denying that the support order of May 26, 1982 represents the sole obligation due them from appellant. This argument lacks merit. Under the doctrine of equitable estoppel, the proponent of such a defense must prove by clear, precise and unequivocal evidence an inducement and justifiable reliance exhibited by a change in condition that causes a disadvantage to the one induced. *See Cosner v. United Penn Bank,* 358 Pa.Super. 484, 517 A.2d 1337 (1986). Turning to the record, we find nothing but an unsupported assertion that appellant relied on a prior support order in his budget planning. The trial court found this assertion inadequate to meet the threshold of the defense and our review of the record supports this conclusion.

■ Similarly, appellant's defense of judicial estoppel must fail. Judicial estoppel provides that a party to an action will be estopped from asserting a position inconsistent with his/her assertion or claim in a previous action, particularly if his/her contentions were successfully maintained. *Associated Hospital Service of Philadelphia v. Pustilnik,* 497 Pa. 221, 439 A.2d 1149 (1981). Here, appellant maintains that since appellee Charlotte Lipschutz was successful in her 1982 petition which resulted in a $100.00 per week award, she is judicially estopped from seeking

support in a different amount. We must disagree. The amount awarded in the 1982 support was two and one-half times lower than what appellant was already obligated to pay under the property settlement agreement, assuming, as appellant does, that the order terminated the agreement. How appellant can now argue that appellee was "successful" under those circumstances is beyond the comprehension of this Court. Thus, we reject this argument.

Appellant next asserts that Charlotte Lipschutz, by filing a petition for support despite the existence of the property settlement agreement, has waived the support provisions of the agreement. In support of his argument, appellant points to various case law which would establish that provisions of property settlement agreements, like provisions in other contracts, may be waived either expressly or by implication. One of the cases relied on by appellant is *Trumpp v. Trumpp*, 351 Pa.Super. 205, 505 A.2d 601 (1985).

In *Trumpp*, a panel of this Court was faced with an issue almost identical to the one raised herein. There, the parties had entered into a property settlement agreement containing provisions for the support of the wife and her two children. One year later, due to the husband's lack of support payments, the wife filed a petition for support. An order was entered directing the husband to pay an amount for support that was higher than that called for in the agreement. Husband filed a petition to modify the order and was successful. Thereafter, the wife filed a petition for modification and husband cross-filed. During the hearing on the petitions, the wife asserted the applicability of the property settlement agreement. In rejecting the wife's petition, the trial court entered an order favorable to the husband. The court reasoned that the wife's conduct, in failing to assert the enforceability of the contract in the past, indicated an intention on her part to relinquish her rights pursuant to the agreement.

In reversing the trial court's order, we held that the actions of the wife in failing to raise the applicability of the

property settlement agreement prior to the filing of her second petition for support could not be construed as a waiver where the terms of the agreement clearly evidenced an intent to enter into binding contractual obligations alterable only by a signed writing to the contrary. As no subsequent written agreement was signed by the parties amending or modifying the separation agreement, there was no waiver.

We are persuaded by the reasoning in *Trumpp* and find it applicable to the facts of the instant case. Here, as in *Trumpp*, appellee initially filed a petition for support rather than rely on the provisions of the property settlement agreement. In addition, the agreement in the instant case is clear in terms of an intent to enter into contractual obligations and specifically provides for written confirmation, signed by both parties, in order to terminate the contract. As no evidence of a writing was received by the trial court expressing an intention to terminate the support provisions of the agreement, there is no waiver. Accordingly, appellant's argument to the contrary is rejected.

Appellant's final affirmative defense is that of modification. In this regard, appellant advances his argument on two fronts. First, appellant argues that modification occurred when he and Charlotte Lipschutz signed a stipulation which was filed in Montgomery County Court. As we have already discussed, this document was never introduced at trial, therefore, it has not been made a part of the record. In any event, this claim is meritless. Appellant's claim that this stipulation effected a modification of the agreement is based upon the case of *Commonwealth ex rel. Fleming v. Fleming*, 288 Pa.Super. 504, 432 A.2d 626 (1981). *Fleming*, however, is distinguishable from the case at bar for the order entered in that case described itself as a temporary amendment of the agreement, and thus recognized that certain obligations of a property settlement were specifically amended by the court with express consent of the parties. This is not the case here. Therefore, for either reason, this first approach is rejected.

Appellant then argues that a recent amendment to the Divorce Code of 1980, 23 P.S. § 401(d), which took effect February 12, 1988, is to be applied retroactively to this case as it was pending at the time the change occurred. He asserts that under the new amendment, a provision of a property settlement agreement regarding child support shall be subject to modification upon a showing of a change of circumstances. He claims that by petitioning the court for an order of support back in 1982, Charlotte Lipschutz sought a modification of the property settlement agreement. We have disposed of this argument above, and need not entertain it again. In addition, the case *sub judice*, though indeed pending at the time of the effective date of amended § 401(d), sought specific performance of the agreement, not a modification of the terms. While Ms. Lipschutz did in fact file a petition for support, the order resulting from that petition was entered in 1982 and no appeal was taken by either party. For purposes of appeal then, the support order was final six years prior to the date of the amendment to § 401(d) took effect. Accordingly, § 401(d) has no applicability here.

Next, appellant contends that appellees were not entitled to college tuition, fees and related expenses, camp expenses, medical and life insurance, and psychological expenses as they did not comply with conditions precedent in the agreement and did not meet their burdens of proof with regard to the same. We have reviewed the agreement and the record, and need not belabor these contentions except to say that ample evidence was entered by appellees to establish their satisfaction of all conditions precedent and burdens of proof with regard to the requested relief. As credibility of this evidence is better left to the finder of fact, in this instance the trial judge, we will not disturb the awards. We therefore reject these claims.

Finally, appellant submits that his preliminary objections to appellees' complaint had been sustained by the trial court by order dated October 23, 1986, resulting in the dismissal of this case. This argument is belied by the record and the

further proceedings involved in this matter. The order dated October 23, 1986, sustained only the objection as to venue, and not the requested demurrer. If such were not the case, there would be no reason for the Court of Common Pleas of Montgomery County to transfer this action to Philadelphia County as there would be no "case" to transfer. The trial court herein properly recognized this fact and disposed of this argument pre-trial. We find no error in so doing.

Judgment affirmed.