703 A.2d 407

**Catherine NICHOLSON, Appellee,**

**v.**

**Gary COMBS, Appellant.**

Supreme Court of Pennsylvania.

Submitted Dec. 4, 1995.

Decided Nov. 14, 1997.

24

26

Joyce Ullman, Philadelphia, for Gary Combs.

Laurence I. Tomar, Yardley, for Catherine Nicholson.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

## OPINION

NEWMAN, Justice.

The issue raised in this case is whether the child support provisions of a property settlement agreement executed prior to the February 1988 amendments to the Divorce Code, 23 Pa.C.S. §§ 3101 *et seq.*, and incorporated into but not merged with a divorce decree, may be modified downward.[1]

## FACTS AND PROCEDURAL HISTORY

Gary Combs (Husband) and Catherine Nicholson (Wife) were married on July 12, 1975, and are the parents of two

---

1. To treat this question thoroughly, we must address significant related issues such as the distinction between incorporated and merged property settlement agreements, the different types of support orders that exist and the interplay between support orders and property settlement

minor children, Stephanie and Jamie. Wife filed for divorce in April of 1987, and the parties executed a property settlement agreement on December 16, 1987, which contains the following provision:

> Husband shall pay to Wife as child support for Stephanie and Jamie the sum of One Thousand Two Hundred ($1,200.00) a month beginning upon the date of the signing of this Agreement. *These payments shall be made through the Bucks County Domestic Relations Office* and shall be payable until the emancipation of Stephanie at which time child support shall drop to one-half of the previous amount. Emancipation shall be age twenty-one (21). Each subsequent year, at the date of signing this Agreement, support shall be modified by proportionately changing support by the increase or decrease of Husband's net after tax income over the twelve month period. Said modification shall be limited to Five (5%) percent either way. The parties agree that Husband's base period net after tax income is Forty One Thousand Two Hundred Seventy Five Dollars and Seventy Nine Cents ($41,275.79).

R. 20a (emphasis added). The Court of Common Pleas of Bucks County (trial court) entered a divorce decree on February 2, 1988, which provided that the agreement was incorporated into but not merged with the decree. On February 10, 1988, the Domestic Relations Section of the Court of Common Pleas of Bucks County entered a support Order incorporating the terms of the property settlement agreement.

On March 27, 1989, Husband filed a Petition to Modify Support. At a hearing on the matter on June 29, 1989, the parties agreed to a stipulated Order providing that child support would be increased to $1,230.00 per month, but would remain frozen for three years. The trial court's June 29, 1989 Order, states in relevant part, "Other stipulations presented to the Court are incorporated by reference, as well as all terms

agreements. Along with modification, we also examine the issues of enforcement and remedies with regard to both orders and agreements.

of [the] Settlement Agreement.[2] Pursuant to the revised Order, Husband was to continue making payments through the Domestic Relations Office. Shortly afterwards, Husband lost his job and accepted new employment at a significantly reduced income. In August of 1989, Husband filed a Petition to Modify Support downward based on his decreased income. At a hearing on December 7, 1989, the trial court held that the June 29, 1989 agreement was binding on Husband, and accordingly he was denied relief. Husband filed an appeal to the Superior Court, which he later discontinued.

Wife then filed a Petition for Contempt seeking to have Husband pay arrears of $780.00 on orthodontia expenses. On November 7, 1991, the trial court entered an Order requiring Husband to pay $390.00 within fifteen days and an additional $390.00 within ninety days. On January 28, 1992, Husband filed a Petition to Modify Support and Vacate Arrearages. The trial court scheduled a hearing for November 5, 1992. Instead of allowing the parties to testify, it held argument on the limited issue of the modifiability of the support Order. Following the proceeding, the trial court refused to modify the level of support, and ordered payment of $100.00 per month on arrearages.

The Superior Court affirmed the trial court's decision regarding modification of support, having concluded that the support provision of the parties agreement provides a level below which support may not be reduced. However, it reversed and remanded with respect to the arrearages because the trial court did not permit Husband the opportunity to testify regarding his present ability to pay. He then filed a timely Petition for Allowance of Appeal, which this Court granted.

## DISCUSSION

### General Discussion of Child Support Provisions

Child support may be provided for in the following ways:

2. Because the June 29, 1989 Order incorporates the terms of the property settlement agreement, we need not address the issue of whether the Order supersedes the property settlement agreement.

(1) Support entered by a Domestic Relations Order with no Property Settlement Agreement.

(2) A Support amount set forth in a Property Settlement Agreement that is incorporated but not merged into a divorce decree and not entered as a domestic relations order.

(3) A support amount set forth in a Property Settlement Agreement that is incorporated and merged into a divorce decree.

As soon as a property settlement agreement is incorporated into the decree, the agreement is superseded by the decree, and obligations imposed are not those imposed by contract but are those imposed by the decree since the contract is merged in the decree.

The court approves the agreement so the terms merge and become part of a court order and, therefore, enforceable as any other court order.

One who is in contempt of a duty of support established by court order may be imprisoned until he or she purges herself or himself of contempt by complying with the terms and conditions imposed by the court.

If a court has the power to enforce an order of child support by exercising its contempt powers, it must also have the right to modify the support order.

(4) A support provision from a property settlement agreement that becomes part of a domestic relations order where the Property Settlement Agreement is incorporated but not merged.

The agreement is approved by the court so the terms become res judicata and not subject to collateral attack, but do not merge.

The payor establishes his or her duty to support separately by (1) agreement; and (2) court order.

The instant matter involves the fourth type of support arrangement because the parties' incorporated but unmerged property settlement agreement provides that Husband is to make his support payments through the Domestic Relations

Office, which issued an Order adopting the terms of the agreement.

Usually, the complications involved with respect to enforcement and modification of child support agreements entered into before the February 1988 amendments to the Divorce Code stem from the distinctions our courts have made regarding incorporation and merger. In *Sonder v. Sonder*, 378 Pa.Super. 474, 549 A.2d 155 (1988) the majority held that where a property settlement agreement is incorporated but not merged, the courts may not enforce or modify the agreement. In a concurring and dissenting opinion, Judge Beck stated that an incorporated agreement should be treated as merged for purposes of enforcement. The case before us raises the issue of whether an incorporated but unmerged agreement is subject to modification when its child support provision is the basis for a domestic relations order.

### Retroactivity of Section 3105

■ In 1987, when the parties executed their property settlement agreement, support provisions of an incorporated but unmerged agreement clearly were not subject to downward modification by a court. *Brown v. Hall*, 495 Pa. 635, 435 A.2d 859 (1981). However, Section 401.1(b) of the Divorce Code, 23 P.S. § 401.1(b), effective February 12, 1988, repealed by Act of December 19, 1990, P.L. 1240, No. 206, § 6, effective in 90 days, reenacted as 23 Pa.C.S. § 3105(b), provides, "A provision of an agreement regarding child support, visitation, or custody shall be subject to modification by the court upon a showing of changed circumstances."

Husband argues that Section 3105 should apply retroactively, thus affording him the opportunity to seek modification of the child support provision of the parties' agreement. In *Nessa v. Nessa*, 399 Pa.Super. 59, 581 A.2d 674 (1990), the Superior Court held, in a footnote, that an agreement executed before February 12, 1988, was not affected by the amendments to the Divorce Code. The Superior Court expanded this in *Brangs v. Brangs*, 407 Pa.Super. 43, 595 A.2d 115 (1991), where it noted the existence of "a well-settled presumption

against retroactive application of statutes affecting substantive rights." *Id.* at 48, 595 A.2d at 118. The presumption is supported by Section 1926 of the Statutory Construction Act, which provides that "no statute shall be construed to be retroactive unless clearly and manifestly so intended by the General Assembly." 1 Pa.C.S. § 1926. Furthermore, this Court has held that "statutes generally should not be applied retroactively to a contractual relationship where the application would alter existing obligations." *Empire Sanitary Landfill, Inc. v. Commonwealth of Pennsylvania, Department of Environmental Resources,* 546 Pa. 315, 340, 684 A.2d 1047, 1059 (1996). However, this Court has retroactively applied laws that "only vary remedies, cure defects in proceedings otherwise fair, and do not vary existing obligations contrary to their situation when entered into...." *Krenzelak v. Krenzelak,* 503 Pa. 373, 382–383, 469 A.2d 987, 991 (1983).

We adopt the Superior Court's reasoning in *Brangs* that application of Section 3105 of the Divorce Code to a divorce decree entered before February 12, 1988, would be retroactive. Retroactive laws have been defined as "those which take away or impair vested rights acquired under existing laws, created new obligations, impose a new duty, or attach a new disability in respect to the transaction or consideration already past." Black's Law Dictionary (6th ed.1990) 1184. As the Superior Court stated:

> The impact of section 401.1(b) [now Section 3105], if applied to the instant private agreement, would be to allow modification of a contractual obligation heretofore unmodifiable under previous law. While the line between 'procedural' and 'substantive' enactments may occasionally be difficult to fix, we can think of no clearer example of substantive change than empowering the court to remake the terms of an enforceable contract where no such power existed until the amendment was enacted.

*Brangs,* 407 Pa.Super. at 53, 595 A.2d at 120. Because the retroactive application of Section 3105 would deprive Wife and children of the contractual right to the specific amount of child support for which they bargained, we reject Husband's argu-

ment that we should apply the amendments retroactively to allow modification.[3]

## CONTRACT PRINCIPLES

Husband next suggests that even if the 1988 amendments to the Divorce Code are not applicable to an agreement executed prior to February 12, 1988, this Court should reverse its long-standing position that the child support provisions of a property settlement agreement incorporated into but not merged with a divorce decree cannot be modified downward. *Brown.* The appellate courts of this Commonwealth have frequently noted that a support provision of a property settlement agreement incorporated but not merged is part of a contract to be enforced according to the law of contracts. *Brown; McMahon v. McMahon,* 417 Pa.Super. 592, 612 A.2d 1360 (1992); *Flick v. Flick,* 408 Pa.Super. 110, 596 A.2d 216 (1991); *Lipschutz v. Lipschutz,* 391 Pa.Super. 537, 571 A.2d 1046 (1990).

This Court has held that "when a [child support agreement] gives less than required or less than can be given to provide for the best interests of the children, it falls under the jurisdiction of the court's wide and necessary power to provide for that best interest." *Knorr v. Knorr,* 527 Pa. 83, 86, 588 A.2d 503, 505 (1991). The Superior Court has also held that in the best interests of the children, the court may increase the amount of child support provided for in an agreement. *See also McGough v. McGough,* 361 Pa.Super. 391, 522 A.2d 638 (1987); *Millstein v. Millstein,* 311 Pa.Super. 495, 457 A.2d

3. In *Brangs,* the Superior Court recognized that in *Jackson v. Culp,* 400 Pa.Super. 519, 583 A.2d 1236 (1990), a panel of the court held that it could retroactively apply the *enforcement* provision of Section 401.1(a) of the Divorce Code, 23 Pa.C.S. § 401.1(a), effective February 12, 1988, repealed by Act of December 19, 1990, P.L. 1240, No. 206, § 6, effective in 90 days, reenacted as 23 Pa.C.S. § 3105(a), which provides for enforcement of non-merged agreements, "to the same extent as though the agreement had been an order of the court except as provided·to the contrary in the agreement." The *Jackson* court held that the 1988 amendment merely provided a procedural vehicle for enforcement of rights. This differs significantly from Husband's attempt in the instant action to obtain retroactive application of Section 3105(b), which involves the *modification* of the substantive contractual rights established in a property settlement agreement.

1291 (1983). It is Husband's position that allowing any modification of an agreement indicates that courts are not employing a pure contract analysis because under contract law, no modification, either upward or downward is permissible. Therefore, he asserts that the courts cannot rely on the "sanctity" of contracts to prevent a party from seeking modification of a child support agreement.

Husband further argues that even if we view allowing upward modification of a support amount that the parties agree to as a public policy exception to contract law, such an exception cannot be valid unless the courts also permit downward modification if the payor establishes that a child's needs are less than the amount the payor has agreed to provide. He maintains that not permitting downward modification has the untoward effect of locking the parties into an agreement based on the unrealistic premise that the payor's situation will not change during the period in which support is required. Additionally, we agree with Husband regarding his position that when courts look outside the four corners of an agreement and increase support based on the best interest of the children, they do not act according to strict principles of contract interpretation. They are instead acting according to a well-reasoned public policy. As this Court stated in *Knorr*:

> Parties to a divorce action may bargain between themselves and structure their agreement as best serves their interests, *Brown v. Hall*, 495 Pa. 635, 435 A.2d 859 (1981). They have no power, however, to bargain away the rights of their children, *Sonder v. Sonder*, *supra*. Their right to bargain for themselves is their own business. They cannot in that process set a standard that will leave their children short.

527 Pa. at 86, 588 A.2d at 505. Accordingly, in order to protect the best interests of the children, our courts permit upward modification of support agreements. Husband's argument that downward modification may be in the best interest of the children if their needs are less than the amount agreed to by the parents, is simply not grounded in the reality of life at the close of the twentieth century. Common experience

shows that the number of children of divorced parents whose needs are surpassed by the support they receive is so limited that it does not warrant a public policy exception to our reluctance to interfere with contracts entered into by the parties.

Additionally, Husband argues that by refusing to decrease the amount of support provided for in an agreement, the courts fail to give due attention to the effect that unforeseen changes in circumstances may have on the payor. While we recognize that one of the reasons for the enactment of Section 401.1(b) of the Divorce Code was to provide such flexibility, our holding today that its successor, Section 3105(b), does not apply retroactively, points to a significant distinction between agreements executed before February 12, 1988, and those executed on or after that date.

When Husband and Wife entered into the agreement on December 16, 1987, they were aware that under then existing law, the courts would not lower Husband's support obligation, but would increase it to provide for their children's best interests. This was a premise upon which the parties negotiated their agreement in its entirety and one on which they could reasonably expect to rely. In contrast, parties who executed agreements on or after February 12, 1988, knew that both downward and upward modification would be a possibility, and therefore they could negotiate their agreements relying on this proposition. Accordingly, based on fairness to the parties and their children, we hold that downward modification of incorporated and unmerged agreements executed before February 12, 1988 is prohibited.

*Equal Protection*

Husband next argues that allowing a payee to seek upward modification while denying a payor the opportunity to seek downward modification offends the equal protection clause of the Fourteenth Amendment of the United States Constitution and Article I Section 1 of the Pennsylvania Constitution. However, principles of equal protection do not always prohibit a state from classifying persons differently

and treating the classes in different ways. *James v. Southeastern Pennsylvania Transportation Authority,* 505 Pa. 137, 477 A.2d 1302 (1984). In *James,* we held that in analyzing the equal protection provisions of the Pennsylvania Constitution we apply the same standards used by the United States Supreme Court when reviewing a claim under the Fourteenth Amendment:

> Under a typical fourteenth amendment analysis of governmental classifications, there are three different types of classifications calling for three different standards of judicial review. The first type—classifications implicating neither suspect classes nor fundamental rights—will be sustained if it meets a 'rational basis' test. In the second type of cases, where a suspect classification has been made or a fundamental right has been burdened, another standard of review is applied: that of strict scrutiny. Finally, in the third type of cases, if 'important,' though not fundamental rights are affected by the classification, or if 'sensitive' classifications have been made, the United States Supreme Court has employed what may be called an intermediate standard of review, or a heightened standard of review.

*Id.* at 145, 477 A.2d at 1305–1306 (citations omitted).

We agree with Husband when he suggests that the appropriate standard of review in the instant matter is the rational basis test. Pursuant to this test, a court will uphold a statute if the classification is rationally related to a legitimate state interest. Because the cornerstone of any support analysis is the best interests of the children, it is reasonable for a payee to seek court intervention on behalf of a child to increase the amount provided by a payor. Since it is also reasonable to assume that the vast majority of children who receive support payments from a parent are not receiving an amount in excess of their needs, the prohibition against allowing payors to seek downward modification assures that parents provide adequately for their children. Because there is a rational relationship between this legitimate governmental interest and the restriction on payors seeking reductions in

support, our case law in this area does not offend equal protection.

### Modifiability of Support Order

As previously noted, the parties' agreement provided that Husband would make support payments through the Bucks County Domestic Relations Section. The trial court entered the divorce decree on February 2, 1988, and on February 10, 1988, the Domestic Relations Section entered a support Order per the divorce decree. Following a hearing on June 29, 1989, the trial court entered a stipulated Order requiring Husband to pay to the Bucks County Domestic Relations Section $1,230.00 per month for child support. The Order incorporates by reference all terms of the property settlement agreement and states:

> Both parties are further ordered to notify the Bucks County Domestic Relations Section in writing or in person within seven (7) days of any change of employment, change of personal address or change of address of any child receiving support. Willful failure to comply may be adjudged in Contempt of this Court. Mandatory income attachment shall occur, where possible, when a defendant is in arrears in an amount equal to or greater than one (1) month's support obligation or at such earlier date as the court may designate.

Husband asserts that this Order is separate and modifiable, even if the support agreement cannot be modified.

In *Sonder*, the Superior Court made the following observations regarding support orders:

> A support or alimony order is a creation of statute and an incident of the marriage which is enforceable by operation of law. Proceedings relative to such orders contain due process requirements, evidentiary findings and involve scrutiny by the court as to their validity, subject to appellate review. In return for this closely proscribed legal proceeding with its attendant safeguards and judicial findings, the legislature has extended the power to bring about compliance by granting courts the right to attach property and

wages and to incarcerate willfully delinquent obligors. A further extension of this power is the right to modify the order or vacate the arrears upon a showing of changed circumstances, 23 P.S. § 504.... Thus, upon analysis, it is apparent that extraordinary attributes and conditions are attached to support and alimony orders, which become instruments of the court, and not subject to the control of the parties.

*Id.* at 487–488, 549 A.2d at 162 (citations omitted). Regarding support agreements not entered through the court, *Sonder* noted:

By comparison, agreements ... are instruments of contract in which the court has no involvement. None of the elements of due process, court review and appealability are involved in agreements such as these, which are private undertakings between two parties, each having responded to the 'give and take' of negotiations and bargained consideration.... Since they are not court orders, the extraordinary powers flowing from a court are not available. To jail a person for failing to pay on his agreement (which created a debt) is prohibited by our constitutions, state and federal, as imprisonment for debt.

*Id.* at 488–489, 549 A.2d at 162–163 (citations omitted).

After reviewing the differences between agreements and support orders, the *Sonder* court noted that our decision in *Brown v. Hall*, 495 Pa. 635, 435 A.2d 859 (1981),

clearly provided that support agreements which were intended to survive a decree of divorce were enforceable in equity both as to past and future payments of support under the agreement. *It was therein also provided that a subsequent reduction in support, through the imposition of a court-imposed support Order, did not abrogate the contract.*

*Sonder*, 378 Pa.Super. at 489, 549 A.2d at 163 (emphasis added).

In *Dechter v. Kaskey*, 379 Pa.Super. 45, 549 A.2d 588 (1988), the companion case to *Sonder*, the parties entered into a written settlement agreement on September 5, 1985, providing

that husband would pay support for two children in the amount of $200.00 per week, retroactive to November 1, 1984, and $235.00 per week as of January 1, 1985. Although the record was unclear, it appeared that the court entered a support order with similar provisions on July 1, 1985. The settlement agreement did not mention the order, and because it was never vacated, it continued in effect. On September 16, 1985, the court entered a divorce decree that incorporated but did not merge the settlement agreement.

On February 26, 1986, the husband in *Dechter* filed a petition to modify the July 1, 1985 order. Following a hearing, the trial court granted the petition and reduced the July 1, 1985 support order from $235.00 per week to $150.00 per week. In its opinion, the trial court referred to both the separation agreement and the support order, and purported to reduce both. On appeal, the Superior Court determined that the trial court did not abuse its discretion in determining that due to a change in circumstance a modification of the July 1, 1985 order was proper. However, because the agreement did not merge with the divorce decree, it was not subject to modification. Accordingly, the Superior Court affirmed the modification of the support order and vacated the modification of the agreement, stating:

> Pursuant to *Sonder*, we held both agreements and support Orders under certain circumstances could be given independent effect. Obviously, double recovery cannot be allowed on both the agreement and the support Order. To the extent the agreement is not completely satisfied by the amount paid pursuant to the support Order, a debt is accumulated which may be recovered in equity. However, as we stated in *Sonder*, the enforcement remedies are not those pursuant to the support laws, therefore attachment of the person and wage attachment are not permissible.

*Dechter*, 379 Pa.Super. at 49, 549 A.2d at 590.

This Court examined the relationship between support agreements and orders in *Knorr*. In *Knorr*, the parties entered into an agreement on June 2, 1986, in which husband agreed to pay wife $200.00 per month in child support until he

became employed, and then he would pay support according to the support guidelines. On August 11, 1986, the trial court entered a final divorce decree incorporating but not merging the agreement. Wife later filed a support complaint alleging that husband did not meet his obligations. In March 1987, the court issued an order requiring Husband to pay $200.00 per month plus arrearages, and directing him to seek employment. Nine months later, wife filed a petition to increase the support order because husband was employed. Husband filed for a reduction of the order because he was laid off from work and was ineligible for unemployment compensation. Wife sought to vacate an order setting a hearing date for husband's petition, on the grounds that the support order was based on a settlement agreement, and therefore unmodifiable. The trial court agreed, and vacated the order.

On appeal, the Superior Court reversed and remanded, holding:

> In the instant case, [husband] did not seek to modify the agreement into which he had entered with his wife. He sought only to reduce the amount of the support order which the court, in response to a separate petition by [wife], had entered.... This order specifically had been made enforceable by the court's contempt powers. Such an order may be modified. It may be modified upwards or downwards as the circumstances require. This is essential if the order is to be enforced by the attachment of the payor's person.

*Knorr v. Knorr*, 380 Pa.Super. 11, at 16–17, 550 A.2d 1338, at 1341 (1988), *affirmed*, 527 Pa. 83, 588 A.2d 503 (1991). This Court affirmed the Superior Court's decision, but held:

> In the instant case the mother appellant has chosen not to sue on their separation agreement, but has sought redress by complaint in the Family Court. *In doing so, she has forsaken her right to sue, seeking the powers of the court for immediate relief.* While such an option may provide swifter

and more enforceable results, it becomes subject to the court and the court is not bound by their agreement. *Knorr*, 527 Pa. at 86–87, 588 A.2d at 505 (emphasis added).

Husband maintains that pursuant to *Knorr*, Wife is precluded from seeking to enforce the support agreement because contempt petitions were filed on her behalf in the Bucks County Domestic Relations Section alleging that Husband failed to comply with the support Order.[4] He bases his position on the statement in *Knorr* that by filing a complaint in family court instead of suing on the separation agreement, mother "has forsaken her contract right to sue, seeking the powers of the court for immediate relief." *Id.* at 86–87, 588 A.2d at 505. However, Husband's interpretation of *Knorr* fails to note that in that case the issue of whether mother could later sue on the separation agreement was not before the Court. Accordingly, the inference of complete abandonment of a separate cause of action was dictum.

Our review of Superior Court cases discussing *Knorr* leads to the conclusion that our decision has once again engendered confusion and uncertainty in this area. For example, in *Ashbaugh v. Ashbaugh*, 426 Pa.Super. 589, 627 A.2d 1210 (1993), the court noted:

> *Knorr* never addressed the question of whether a party's conduct in filing a support complaint in one action would preclude that party from seeking to enforce the contract in future disputes. *Knorr* thus did not address the res judicata effect, if any, to be accorded to the parties conduct.

*Ashbaugh*, 426 Pa.Super. at 598 n. 5, 627 A.2d at 1215 n. 5. In *McGinnis v. McGinnis*, 439 Pa.Super. 372, 654 A.2d 563 (1995), the parties entered into a child support agreement, but rather than seeking enforcement of the agreement, the wife initiated a support action. The Superior Court relied on *Knorr*, and stated:

> Appellee in this action elected not to sue on the support agreement, but instead initiated an action in support. By

---

4. In Bucks County, the Director of the Domestic Relations Section files contempt petitions upon complaint by the payee.

electing this course, she forsook her contract right to sue, and instead submitted her claim to the powers of the support court. *Knorr v. Knorr,* 527 Pa. 83, 86–87, 588 A.2d 503, 505 (1991).

*McGinnis,* 439 Pa.Super. at 377, 654 A.2d at 565. Yet, in *Swartz v. Swartz,* 456 Pa.Super. 16, 689 A.2d 302 (1997), the Superior Court characterized *Knorr* as follows:

We reversed and the Supreme Court affirmed our decision, concluding that the parties' private agreement could not be enforced or considered in a separate support action. However, the Knorr Court noted that to enforce the private agreement, wife would have to sue in contract under the theory of specific performance.

*Swartz,* 456 Pa.Super. at 21, 689 A.2d at 304 (citation omitted).

More important, the interpretation of *Knorr* suggested by Husband is inconsistent with this Court's decision in *Brown* and numerous Superior Court cases that have held that support agreements and support orders may be enforced separately. *See Swartz* (a court-imposed support order does not vitiate a private agreement that has not been merged into a divorce decree); *Soll v. Soll,* 429 Pa.Super. 312, 632 A.2d 581 (1993) (support agreements and court orders may coexist and be enforced separately); *Lipschutz* (a support order does not estop a party from enforcing a prior support agreement); *Sonder* (support orders and agreements can be given independent effect); *Trumpp v. Trumpp,* 351 Pa.Super. 205, 505 A.2d 601 (1985) (the remedy of specific performance of a private agreement is available even if there is an intervening support order).

 Husband's reading of *Knorr* fails to recognize the distinct nature of private agreements and court orders regardless of whether they are domestic relations orders, support orders entered by the family court, or orders resulting from agreement of the parties that support payments be made through the domestic relations office. Furthermore, under such an interpretation of *Knorr,* support orders that exist independently of agreements are of limited value if by enforc-

ing them, payees forever abandon their right to enforce their private contracts. We are especially concerned that by giving preclusive effect to a support order, and preventing the payee from bringing an action on the contract, Husband's reading of *Knorr* fails to give due attention to the financial needs of the children whose interests the parties intended to protect through the support agreement. Accordingly, we clarify *Knorr*, and hold that when, as here, a payee seeks redress in the family court based on a support order, he or she cannot assert the existence of a separate agreement as a reason for the court not to modify its order downward. Because failure to comply with a support order can lead to incarceration, the court must be able to reduce the amount if the payor establishes an inability to pay. Moreover, we clarify that the existence of a proceeding on the support order in the family court does not preclude a payee from initiating a *separate* civil action based on a support agreement either for compensatory damages or for specific performance. In an action at law, the payee may recover breach of contract damages, which in this case would be the unpaid amount of support plus interest. The payee may also choose to seek relief in equity through an order of specific performance directing the payor to comply with his or her future support obligations under the agreement. In addition, the court of equity may order other relief as it deems just. The payee who is successful in his or her civil action has available the enforcement remedies set forth in the Pennsylvania Rules of Civil Procedure. As an example, consider a payor who is obligated to pay child support of $1000.00 per week. If the family court determines that he is only able to pay $100.00 per week, and reduces the support order accordingly, in the event he is rehabilitated after three years and obtains additional sums of money, the payee could initiate a civil action and receive a judgment of $140,400.00 ($900.00 × 156 weeks) plus interest and costs.

Because support agreements that are incorporated but not merged into a divorce decree are enforced according to contract principles, we note that defenses such as impracticability may be available to the payor in an action in law or

44

equity. However, a party normally assumes the risk of his inability to perform his contractual duties. *Luber v. Luber*, 418 Pa.Super. 542, 614 A.2d 771 (1992), *appeal denied*, 535 Pa. 636, 631 A.2d 1008 (1993); Restatement (Second) of Contracts, § 261, comment e.

Where an agreement and support order coexist, the payee does not abandon his or her right to sue on the contract merely by bringing an action under the existing order. In the support action, however, the payee may not claim that the contract prevents the family court from modifying the order downward if such reduction is necessary to prevent payor from having to comply with an order that he cannot pay due to changed circumstances. Bringing an action on the support order does not preclude the payee from bringing a separate action on the contract. We specifically hold that the family court's determination of a payor's inability to pay does not preclude the court sitting in law or equity from determining that the terms of the agreement are enforceable.

## CONCLUSION

To summarize, where a support agreement is incorporated but not merged into a divorce decree before February 12, 1988, the agreement is not subject to reduction, although it may be increased if the best interests of the children so require. However, if there is a separate support order based on a support agreement that is incorporated into but not merged with a divorce decree before February 12, 1988, the support order may be increased in the best interests of the children or modified downward upon a showing of changed circumstances, which demonstrate the inability to pay the present order. The trial court's power to modify the support order downward is not affected by the existence of the agreement upon which the support order is based. The court is modifying its own order, and not the parties' agreement. However, the support agreement remains a viable contract not subject to downward modification, and the payee may seek relief in law or in equity. In that case, all payments made

pursuant to the support order shall be deducted from the award on the support agreement, thus precluding a double recovery for the payee.

We recognize that parties who have both a support order and agreement are placed in the unenviable position of possibly maintaining two support related actions. In the instant matter the parties caused the situation by not merging their agreement with the divorce decree (thus maintaining an independent contract), and then having a support Order entered reflecting the terms of the agreement. Because we are precluded from applying Section 3105 retroactively, and must treat court orders and private agreements for support differently with respect to modification, parties who have so situated themselves must bear the burden, and possible benefits of their decision.

Accordingly, we affirm the portion of the Order of the Superior Court remanding for a hearing on arrearages, and we reverse the portion of the Order affirming the determination that the support order is not modifiable. We remand this case to the trial court to determine if it must reduce the support Order so as not to hold Husband in contempt of an Order with which he cannot comply. If the court does modify the Order downward, Wife still may seek monetary damages for breach of contract, or specific performance of the support provisions of the property settlement agreement.

NIGRO, J., concurs in the result only.