J-S30015-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| ROBERT R. ZANDROWICZ | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| AGNIESZKA M. ZANDROWICZ | |
| Appellee | No. 2269 EDA 2015 |

Appeal from the Order Entered June 25, 2015
In the Court of Common Pleas of Monroe County
Domestic Relations at No(s): 2894 CIVIL 2012; 389 DR 2012

BEFORE:  GANTMAN, P.J., FORD ELLIOTT, P.J.E., and JENKINS, J.

MEMORANDUM BY GANTMAN, P.J.:                    **FILED JUNE 21, 2016**

Appellant, Robert R. Zandrowicz ("Husband"), appeals from the order entered in the Monroe County Court of Common Pleas, which granted the petition to enforce the marital property settlement agreement (the "Agreement") filed by Appellee, Agnieszka M. Zandrowicz ("Wife").  We affirm.

The relevant facts and procedural history of this case are as follows. Husband and Wife married in 1998 and had two daughters during the marriage.  The parties separated in 2011, and Husband filed a divorce complaint on April 11, 2012.  After separation but prior to divorce, the parties found a marital property settlement form on the Internet, read it together, and executed the Agreement pursuant to their wishes without the aid of counsel.  Per the Agreement, beginning June 30, 2012, Husband was

to: (1) keep the marital residence and assume full responsibility for the mortgage; (2) pay Wife $1,500.00 per month in spousal maintenance for eighty-four months; and (3) pay Wife $1,159.00 per month in child support. The parties filed the Agreement with the court on April 20, 2012. On July 31, 2012, the court entered a divorce decree, which incorporated the terms of the Agreement.

Following the divorce, Wife and the children continued to reside in the marital residence with Husband until October 2014. During that time, Husband did not pay Wife the child support or spousal maintenance provided for in the Agreement. In October 2014, both parties filed petitions for modification of child support. After hearings on the child support matter, the court increased Husband's child support obligation to $2,068.00 per month. Around the same time, Wife filed a petition to enforce the Agreement due to Husband's failure to provide Wife any spousal maintenance and child support since the divorce. Husband filed an answer and new matter on December 15, 2014, which raised various affirmative defenses to enforcement of the Agreement. On December 29, 2014, Wife filed an answer to Husband's new matter, and the court scheduled the petition for a hearing. The court conducted hearings on March 19, 2015, and May 21, 2015.

On June 24, 2015, the court granted Wife's petition to enforce the Agreement and ordered Husband to: (1) pay Wife spousal maintenance arrears in the amount of $51,000.00 within twelve months; (2) pay Wife

spousal maintenance of $1,500.00 per month beginning on June 30, 2015; and (3) pay Wife child support arrears in the amount of $32,452.00 at the rate of $1,500.00 per month until paid in full. On July 24, 2015, Husband timely filed a notice of appeal. On August 11, 2015, the court ordered Husband to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and Husband timely complied on September 1, 2015.

Husband raises the following issues for our review:

> UNJUST ENRICHMENT: DID THE TRIAL COURT ERR AND/OR ABUSE ITS DISCRETION BY UNJUSTLY ENRICHING WIFE WHEN IT DECLINED TO CREDIT HUSBAND THE PERIOD OF TIME (APPROXIMATELY TWENTY EIGHT AND A HALF…MONTHS) SUBSEQUENT TO THE AGREEMENT WHEN WIFE AND MINOR CHILDREN WERE LIVING WITH HUSBAND, AND HUSBAND WAS FINANCIALLY SUPPORTING THEM?

> LACK OF FULL AND FAIR DISCLOSURE: DID THE TRIAL COURT ERR AND/OR ABUSE[] ITS DISCRETION BY UPHOLDING THE PARTIES' AGREEMENT IN ITS ENTIRETY WHEN TESTIMONY REVEALED THAT THERE WAS NOT FULL AND FAIR DISCLOSURE BETWEEN THE PARTIES AS TO THE DEBT HUSBAND ASSUMED, OR THE ASSETS OF THE PARTIES, AND TESTIMONY AND EVIDENCE SHOWED THAT THERE WAS A LACK OF FULL UNDERSTANDING AS TO THE TERMS, CONDITIONS AND PROVISIONS OF THE AGREEMENT, WHEN NEITHER PARTY WAS REPRESENTED BY COUNSEL, NEITHER PARTY SPEAKS ENGLISH AS A FIRST LANGUAGE?

> WAIVER: DID THE TRIAL COURT ERR AND/OR ABUSE ITS DISCRETION BY FAILING TO DETERMINE THAT WIFE WAIVED ANY AND ALL CLAIMS RELATIVE TO SPOUSAL MAINTENANCE AND CHILD SUPPORT THROUGH OCTOBER 15, 2014, THE PERIOD OF TIME DURING WHICH SHE AND THE MINOR CHILDREN WERE RESIDING WITH AND BEING

FINANCIALLY SUPPORTED BY HUSBAND[?]

LACHES: DID THE TRIAL COURT ERR AND/OR ABUSE ITS DISCRETION WHEN IT FAILED TO CONSIDER HUSBAND'S ARGUMENT FOR LACHES GIVEN THAT WIFE FAILED TO COMMENCE AN ACTION TO ENFORCE THE [] AGREEMENT FOR APPROXIMATELY TWO AND A HALF YEARS AFTER THE EXECUTION OF THE AGREEMENT, AND HUSBAND IS PREJUDICED BY OWING PAST DUE ALIMONY AND CHILD SUPPORT FOR THE PERIOD OF TIME PRIOR TO WIFE AND CHILDREN MOVING OUT?

MUTUAL MISTAKE: DID THE TRIAL COURT ERR AND/OR ABUSE ITS DISCRETION WHEN IT FAILED TO CONSIDER HUSBAND AND WIFE'S MUTUAL MISTAKE AS TO THE MODIFIABILITY OF THE CHILD SUPPORT SET FORTH IN THE AGREEMENT, AND NEITHER PARTY WAS REPRESENTED BY COUNSEL, AND BOTH PARTIES INTENDED THE ALIMONY AND CHILD SUPPORT PAYMENTS TO BE NON-MODIFIABLE?

EQUITABLE ESTOPPEL: DID THE TRIAL COURT ERR AND/OR ABUSE ITS DISCRETION BY FAILING TO UPHOLD HUSBAND'S ARGUMENT FOR EQUITABLE ESTOPPEL, WHEN BOTH PARTIES TESTIFIED THAT THEY BELIEVED AT THE TIME THEY ENTERED THE AGREEMENT THAT SUPPORT WAS NOT MODIFIABLE, AND HUSBAND'S AGREEMENT TO PAY WIFE EIGHTY-FOUR (84) MONTHS OF ALIMONY WAS CONDITIONED UPON THE FIXED CHILD SUPPORT AMOUNT SET FORTH IN THE AGREEMENT OF $1,159.00 PER MONTH?

ILLUSORY PROMISE: DID THE TRIAL COURT ERR AND/OR ABUSE ITS DISCRETION BY FAILING TO TAKE INTO ACCOUNT THAT HUSBAND'S ACCEPTANCE OF THE TERMS OF THE AGREEMENT WAS CONDITIONED UPON THE MISTAKEN BELIEF, WHICH WAS REINFORCED BY WIFE, THAT THE SUPPORT FIGURES WERE NOT MODIFIABLE, WHEN THE BARGAINED FOR PROMISE WAS ILLUSORY?

INTENT OF THE PARTIES: DID THE TRIAL COURT ERR AND/OR ABUSE ITS DISCRETION BY FAILING TO TAKE INTO ACCOUNT THE INTENT OF THE PARTIES AT THE TIME THE AGREEMENT WAS ENTERED INTO, AND FAILING TO

CONSIDER TESTIMONY AND EVIDENCE THAT COULD HAVE CLARIFIED THE SAME, ESPECIALLY GIVEN THE LACK OF SPECIFICITY IN THE TERMS OF THE AGREEMENT?

REASONABLE ABILITY TO PAY: DID THE TRIAL COURT ERR AND/OR ABUSE ITS DISCRETION BY ISSUING AN ORDER DIRECTING HUSBAND TO PAY SPOUSAL MAINTENANCE ARREARS IN THE AMOUNT OF $51,000.00 WITHIN TWELVE (12) MONTHS, SPOUSAL MAINTENANCE OF $1,500.00 PER MONTH, CHILD SUPPORT ARREARS IN THE AMOUNT OF $32,452.00…AT THE RATE OF $1,500.00 PER MONTH UNTIL PAID IN FULL, ON TOP OF THE CHILD SUPPORT CALCULATED BY DOMESTIC RELATIONS IN THE AMOUNT OF $2,068.00 PER MONTH (TOTAL MONTHLY PAYABLE BY HUSBAND EQUALS $9,318.00) WITHOUT CONSIDERING HUSBAND'S REASONABLE ABILITY TO PAY GIVEN HIS INCOME AND EXPENSES?

(Husband's Brief at 16-18).[1]

As a preliminary matter, we observe:

**Rule 1030.  New Matter**

(a)    Except as provided by subsection (b), all affirmative defenses including but not limited to the defenses of accord and satisfaction, arbitration and award, consent, discharge in bankruptcy, duress, estoppel, failure of consideration, fair comment, fraud, illegality, immunity from suit, impossibility of performance, justification, laches, license, payment, privilege, release, res judicata, statute of frauds, statute of limitations, truth and waiver shall be pleaded in a responsive pleading under the heading "New Matter."  A party may set forth as new matter any other material facts which are not merely denials of the averments of the preceding pleading.

\* \* \*

Pa.R.C.P. 1030(a).  Importantly, the list of affirmative defenses contained in

---

[1] For purposes of disposition, we have reordered Appellant's issues.

Pa.R.C.P. 1030(a) is not exclusive. *Falcione v. Cornell School District*, 557 A.2d 425, 428 (Pa.Super. 1989). "An affirmative defense is distinguished from a denial of facts which make up a plaintiff's cause of action in that a[n affirmative] defense will require the averment of facts extrinsic to the plaintiff's claim for relief." *Id.* "Failure to plead an affirmative defense in compliance with [Pa.R.C.P.] 1030 results in waiver of the defense." *Werner v. Werner*, 573 A.2d 1119, 1121 (Pa.Super. 1990), *appeal denied*, 527 Pa. 668, 593 A.2d 843 (1991); *see also* Pa.R.C.P. 1032(a).

Instantly, Husband raised his first issue, unjust enrichment, and his second issue, lack of full and fair disclosure, for the first time in his court-ordered Rule 1925(b) statement. Both of these claims are affirmative defenses because they require Husband to aver facts extrinsic to Wife's claim for relief, which would prevent the enforcement of the Agreement. *See Falcione, supra*. Because Husband failed to raise these affirmative defenses in a new matter in response to Wife's petition to enforce the Agreement or any time prior to the filing of his Rule 1925(b) statement, they are waived for purposes of our review. *See Werner, supra*; Pa.R.C.P. 1032(a). Therefore, we will not address the merits of Husband's first and second issues on appeal.

With respect to Appellant's remaining claims on appeal, the relevant law is as follows. Private support agreements are subject to contract

principles and are enforceable in an action at law for damages or in equity for specific performance. ***Nicholson v. Combs***, 550 Pa. 23, 43, 703 A.2d 407, 417 (1997). The action at law for damages might include the unpaid amount of support plus interest, whereas relief in equity for specific performance seeks an order directing the payor to comply with his future support obligations under the agreement. ***Id.*** "The powers of a domestic relations judge are plenary and the function is that of a law judge or equity chancellor as the case demands." ***Horowitz v. Horowitz***, 600 A.2d 982, 984 n.1 (Pa.Super. 1991).

On appeal from an order interpreting a marital settlement agreement, we must decide whether the trial court committed an error of law or abused its discretion. ***Tuthill v. Tuthill***, 763 A.2d 417, 419 (Pa.Super. 2000) (*en banc*), *appeal denied*, 565 Pa. 675, 775 A.2d 808 (2001). "We do not usurp the trial court's fact-finding function." ***Id.***

> "[J]udicial discretion" requires action in conformity with law on facts and circumstances before the trial court after hearing and due consideration. Such discretion is not absolute, but must constitute the exercises of sound discretion. This is especially so where, as here, there is law to apply. On appeal, a trial court's decision will generally not be reversed unless there appears to have been an abuse of discretion or a fundamental error in applying correct principles of law. An "abuse of discretion" or failure to exercise sound discretion is not merely an error of judgment. But if, in reaching a conclusion, law is overridden or misapplied, or the judgment exercised is manifestly unreasonable or lacking in reason, discretion must be held to have been abused.

***In re Deed of Trust of Rose Hill Cemetery Ass'n Dated Jan. 14, 1960***,

527 Pa. 211, 216, 590 A.2d 1, 3 (1991) (internal citations omitted). ***See also Miller v. Sacred Heart Hosp.***, 753 A.2d 829, 832 (Pa.Super. 2000). "Because contract interpretation is a question of law, this Court is not bound by the trial court's interpretation." ***Stamerro v. Stamerro***, 889 A.2d 1251, 1257 (Pa.Super. 2005).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Jennifer Harlacher Sibum, we conclude Husband's, third, fourth, fifth, sixth, seventh and eighth issues on appeal merit no relief. The trial court opinion comprehensively discusses and properly disposes of those questions. (***See*** Trial Court Opinion, filed June 24, 2015, at 3-12) (finding: **(issues 3 and 4)** Husband failed to prove necessary elements to assert defense of laches or waiver; parties testified that they knowingly remained in marital residence together following their decision to separate; Wife testified she had access to Husband's bank accounts with Husband's knowledge, maintained household, and cared for parties' children; Husband testified he provided financial support for benefit of household and kids, and that living arrangement provided Husband with convenient and easy opportunity to spend time with his children; in light of this testimony, Husband failed to demonstrate that continued cohabitation with Wife and Wife's delayed petition to enforce Agreement caused him to suffer prejudice; thus, Husband's reliance on doctrine of laches and waiver merits no relief; **(issues 5 and 6)** parties

testified that after separation, in effort to save money on counsel fees, they obtained blank marital property settlement form from Internet; Husband and Wife both testified that they read form together and discussed relevant terms and provisions they wanted to include; both Husband and Wife further stated that after discussion, Husband populated form in accordance with parties' mutual agreement; Husband's belief that his spousal maintenance and child support obligations would be constant and unmodifiable was result of his own judgment and does not appear to have been induced by any representation on Wife's part; thus, doctrine of equitable estoppel does not apply and Husband's equitable estoppel and illusory promise claims are meritless; **(issue 7)** Agreement does not contain any language that pertains to modification of spousal maintenance and child support obligations; at time of execution of Agreement, parties simply did not contemplate or address possibility of modification of these obligations; further, court can increase child support obligation regardless of Agreement or either parties' assumption regarding modifiability; thus, Husband failed to establish by clear, precise, and convincing evidence that mutual mistake of fact existed, which would entitle him to relief; **(issue 8)** Agreement evinces clear and unambiguous intent by both parties to determine and settle their respective property rights finally and for all time; parties also intended to be legally bound by terms of Agreement; plain reading of spousal maintenance provision of Agreement reveals parties' intent to have Husband pay Wife

$1,500.00 per month in spousal maintenance for eighty-four months subject to termination upon Wife's death or remarriage; even though parties were not represented by counsel at time of execution of Agreement, court will not assume parties chose their words carelessly; Husband's own testimony supports finding that Agreement is clear and unambiguous because Husband stated it was his own belief that he would have to pay spousal maintenance and child support for eighty-four months; Agreement also contained valid and enforceable child support provision, which court properly modified after parties' filed petitions for modification in October 2014; thus, Husband's complaint that court ignored intent of parties when it granted Wife's petition to enforce Agreement fails). Therefore, with respect to Husband's third, fourth, fifth, sixth, seventh, and eighth issues on appeal, we affirm on the basis of the trial court's opinion.

With respect to Husband's ninth issue on appeal, Husband argues the court failed to consider his ability to pay or Wife's actual need when it ordered Husband to pay child support and spousal maintenance pursuant to the Agreement. Husband complains the court order requires him to pay Wife approximately $9,000.00 per month in child support and spousal maintenance despite the fact that Wife admitted to the use of Husband's accounts to pay her own bills after the divorce. Husband avers the court-ordered payment schedule does not leave him enough money each month to pay his bills including his mortgage, taxes, and insurance. Husband

concludes his court-ordered assumption of liabilities pursuant to the Agreement is unreasonable, and this Court should vacate and reverse the trial court's enforcement of the Agreement. We disagree.

This Court is not permitted to review the reasonableness of a marital settlement agreement to determine its validity. ***Paroly v. Paroly***, 876 A.2d 1061, 1065 (Pa.Super. 2005). Importantly:

> Traditional principles of contract law provide perfectly adequate remedies where contracts are procured through fraud, misrepresentation or duress. Consideration of other factors, such as the knowledge of the parties and the reasonableness of their bargain, is inappropriate. [Postnuptial] agreements are contracts, and, as such, should be evaluated under the same criteria as are applicable to other types of contracts. Absent fraud, misrepresentation, or duress, spouses should be bound by the terms of their agreement.

***Simeone v. Simeone***, 525 Pa. 392, 400, 581 A.2d 162, 165 (1990).

Instantly, prior to divorce, Husband and Wife read the marital property settlement agreement form together, discussed the relevant terms and provisions they wanted to include, and then Husband populated the form pursuant to the parties' wishes. The trial court's June 24, 2015 order merely enforced the terms of the Agreement entered into by the parties. When granting Wife's petition to enforce the Agreement, the court specifically determined the Agreement was clear and unambiguous and Husband's challenges to the enforcement of the Agreement had no merit. Husband cannot now avoid his contractual obligations under the Agreement with an assertion that the terms are unreasonable in light of his income and other

- 11 -

expenses. ***See Simeone, supra***; ***Paroly, supra***. Therefore, the trial court properly granted Wife's petition to enforce the Agreement, and Husband's ninth issue on appeal has no merit. ***See Tuthill, supra***. Accordingly, we affirm.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/21/2016

COURT OF COMMON PLEAS OF MONROE COUNTY
FORTY-THIRD JUDICIAL DISTRICT
COMMONWEALTH OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT ROMUALD ZANDROWICZ, | : | No. 389 DR 2012 |
| | : | No. 2894 CV 2012 |
| Plaintiff | : | |
| | : | |
| vs. | : | |
| | : | |
| AGNIESZKA MARIA ZANDROWICZ, | : | PETITION TO ENFORCE |
| | : | MARITAL PROPERTY |
| Defendant | : | SETTLEMENT AGREEMENT |

## OPINION

This matter comes before us on Defendant's Petition to Enforce Marital Property Settlement Agreement filed on November 13, 2014. The relevant facts and procedural history are summarized as follows: Robert ("Husband") and Agnieszka ("Wife") Zandrowicz were married on November 20, 1998. The couple has two children born of the marriage. Having the intent to separate and divide their property, the parties utilized an online form they found on the internet and executed a Marital Property Settlement Agreement ("Agreement") on April 11, 2012. The parties also filed a monthly net income calculation on April 20, 2012, which identified Wife's monthly income as $700.00, and Husband's monthly income as $6,500.00. On July 31, 2012, the Court issued a Divorce Decree, which incorporated, but did not merge the parties' Agreement into the Decree.



$\mathcal{8}$

On November 13, 2014, Wife filed the instant Petition to Enforce Marital Property Settlement Agreement. Husband filed an Answer and New Matter to Defendant's Petition to Enforce on December 12, 2014. Two hearings were conducted on this matter- one on March 19, 2015 and a second one on May 21, 2015. After hearing on this matter and upon review of all pleadings filed, we are now prepared to decide Wife's Petition.

## DISCUSSION

It is well-established that agreements between married parties are presumed to be valid. *See In Re Ratoney's Estate*, 277 A.2d 791 (Pa. 1971). "The determination of marital property rights through prenuptial, postnuptial and settlement agreements has long been permitted, and even encouraged." *Laudig v. Laudig*, 425 Pa.Super. 228, 624 A.2d 651, 653 (1993). The Pennsylvania Divorce Code also recognizes the validity of marital agreements. Section 3501 specifically provides that the definition of marital property does not include "property excluded by valid agreement of the parties entered into before, during or after the marriage." 23 Pa.C.S. § 3501(a)(2).

A postnuptial agreement is typically a contract entered into after marriage by a husband and wife, generally involving the property or property rights of the parties. *Vaccarello v. Vaccarello*, 757 A.2d 909, 911 (Pa. 2000). A postnuptial agreement differs from other types of marital agreements in that it generally resolves property rights definitively. Where spouses desire to

2

"settle and determine their respective property rights finally and for all time, [their agreement] should be construed as a postnuptial agreement." *Id.* (internal citations omitted). Moreover, liability under a postnuptial agreement is not automatically terminated by reconciliation of the parties or subsequent divorce. *See Commonwealth ex rel. DiValerio v. DiValerio*, 82 A.2d 687 (Pa.Super. 1951).

Postnuptial agreements are considered as contracts, and as such, are governed by contract law. *Simeone v. Simeone*, 525 Pa. 392, 400, 581 A.2d 162, 165 (1990). Generally, the principles that govern antenuptial agreements are also applicable to postnuptial agreements. *Lugg v. Lugg*, 64 A.3d 1109 (Pa. Super. 2013). Spouses should be bound by the terms of their agreement unless there is a finding of fraud, misrepresentation, or duress. *See McMahon v. McMahon*, 612 A.2d 1360, 1363 (Pa.Super. 1992).

In the case *sub judice*, Husband raises several challenges to the enforcement of the marital settlement agreement. First, Husband argues that Wife failed to commence an action to enforce the property settlement agreement for approximately two and a half years after the execution of the agreement, and thus the current action is barred by the doctrine of laches. Laches is the failure to assert a right for an unreasonable and unexplained length of time. *See Patten v. Vose*, 590 A.2d 1307, 1309 (1991). It is based on "some change in the condition or relation of the parties which occurs during

3

[a] period [that] the complainant unreasonably failed to act." *Id.* A party claiming the benefit of the doctrine of laches must demonstrate prejudice due to lapse of time. *Beaver v. Penntech Paper Co.*, 307 A.2d 281 (Pa. 1973). It is important to be mindful of the fact that laches will not be imputed by the mere passage of time, but requires an evaluation of all circumstances of a particular case. *Lindenfelser v. Lindenfelser*, 119 A.2d 87, 88 (Pa. 1956)(internal citations omitted).

Husband asserts the defense of laches due to the delay on Wife's part to file an action to enforce the property settlement agreement. Husband argues that Wife had resided in the formal marital home from the time the property settlement agreement was executed until she filed the current petition to enforce. During this period, Husband contends that he paid the bills relating to the residence, which included the mortgage and the utility bills, and also provided food and other items to the household. Husband claims that if Wife is entitled to receive spousal maintenance for this period of time, he will be severely prejudiced. Furthermore, Husband argues that Wife had access to Husband's bank accounts and could have utilized these funds to retain counsel and pursue this action sooner.

We find that Husband has failed to prove the necessary elements to successfully assert the defense of laches. The parties testified that following their decision to separate, they knowingly remained in this living arrangement.

4

Wife testified that she remained in the marital residence, had access to Husband's bank accounts, maintained the household, and cared for the parties' children. Husband, on the other hand, testified that he provided financial support for the benefit of the household and his children, and the living arrangement provided him convenient and easy opportunity to spend time with his children. We find that Husband failed to demonstrate any prejudice suffered by knowingly remaining in this protracted period of cohabitation with Wife.

Second, Husband argues that the property settlement agreement should be dismissed based on equitable estoppel. Husband contends that he entered into the property settlement agreement relying on Wife's assurances that his spousal maintenance and child support obligations would not change. Husband further argues that he would not have entered into this agreement knowing that his spousal and child support obligation would be different than $2,659.00 per month.

Equitable estoppel arises when a party by acts or representations intentionally or through culpable negligence, induces another to believe that certain facts exist and the other justifiably relies and acts upon such belief, so that the latter will not be prejudiced if the former is permitted to deny the existence of such facts. *Straup v. Times Herald*, 423 A.2d 713, 720 (Pa.Super. 1980). "[E]quitable estoppel is a doctrine of fundamental fairness intended to

5

preclude a party from depriving another of a reasonable expectation when the party inducing the expectation knew or should have known that the other would rely to his detriment upon that conduct." *Id.* Thus, the essential elements of equitable estoppel are inducement and justifiable reliance on that inducement. The inducement may be by words or by conduct and the reliance must be exhibited by a change in condition either by act or forbearance that causes a disadvantage to the one induced. *Novelty Knitting Mills, Inc. v. Siskind*, 457 A.2d 502, 503-04 (Pa. 1983). The party asserting estoppel has the burden of proving the elements by clear, precise, and unequivocal evidence. *Blofsen v. Cutaiar*, 333 A.2d 841, 844 (Pa. 1975).

We find Husband's argument to be without merit. The parties testified that following their decision to separate and in an effort to save counsel fees, they obtained a blank property settlement agreement from the Internet. Husband and Wife both testified that they read the form together; discussed the relevant terms and provisions they wanted to include; and Husband populated the blank form according to their mutual agreement. Husband has failed to prove by clear, precise and unequivocal evidence that Wife induced Husband into this agreement by promising that his spousal and child support obligations would remain constant. It is important to note the doctrine of equitable estoppel does not apply where the complainant's actions appear to be a result of his own will or judgment rather than a product of what the

6

other party did or represented. The action must be induced by the other party's conduct or representation. Here, Husband's mistaken understanding of his spousal and child support obligations does not appear to be induced by any representation on Wife's part, but rather stems from Husband's own judgment.

Third, Husband argues that the agreement should not be enforced due to Wife's negligent misrepresentation. Husband asserts that Wife misrepresented to Husband that his spousal and child support payments would total $2,659.00 per month and would not change. Following the discussion and analysis cited above, we find that this argument must also fail.

In order to prove negligent misrepresentation, a plaintiff must show (1) a misrepresentation of a material fact; (2) the representor must either know of the misrepresentation, must make the misrepresentation without knowledge as to its truth or falsity or must make the representation under circumstances in which he ought to have known of its falsity; (3) the representor must intend the representation to induce another to act on it; and (4) injury must result to the party acting in justifiable reliance on the representation. *Gibbs v. Ernst*, 647 A.2d 882, 890 (Pa. 1994). As stated above, Husband cannot prove that Wife misrepresented that Husband's monthly financial obligations would remain constant.

7

Alternatively, Husband argues that the property settlement agreement must be voided due to mutual mistake of fact. Husband contends that the parties entered into the agreement under the mistaken assumption that child support cannot be modified. Further, Husband notes that neither party had the benefit of counsel in reviewing and drafting the agreement, and that the agreement itself, which they obtained online, did not notify the parties that child support could be modifiable.

The doctrine of mutual mistake of fact serves as a defense to the formation of a contract and occurs when the parties to the contract have "an erroneous belief as to a basic assumption of the contract at the time of formation which will have a material effect on the agreed exchange as to either party." *Bianchi v. Bianchi*, 859 A.2d 511, 516, n.3 (Pa.Super. 2004). To obtain reformation of a contract because of mutual mistake, the moving party is required to show the existence of the mutual mistake by evidence that is clear, precise and convincing. *Bugen v. New York Life Insurance Co.*, 184 A.2d 499, 500 (Pa. 1962).

We find that Husband failed to satisfy his burden of proving a mutual mistake of fact that would permit reformation of the Agreement. The Agreement does not contain any language pertaining to the modifiability of the spousal and child support payment obligations. At the time of the contract formation, the parties simply did not contemplate or address the modification

8

of these payments. Further, we note that regardless of the understanding of either party as to modifiability, a court is not precluded by the terms of a property settlement agreement from increasing the amount of child support provided for in the agreement. *Millstein v. Millstein*, 457 A.2d 1291 (Pa.Super. 1983). Thus, even if Husband could prove the existence of the mutual mistake regarding modifiability of child support payments, it would be immaterial.

Fourth, Husband argues that Wife materially breached the Agreement by filing a domestic relations action seeking an increase in child support. Husband argues that the Agreement does not provide for the modification of child support, and thus, Wife's action is a material breach of the Agreement. As stated above, a court is not precluded by the terms of a property settlement agreement from increasing child support obligations. *See McGough v. McGough*, 522 A.2d 638, 640 (1987). Further, Wife's action did not breach any provision in the agreement, as there are no provisions that prevent either party from seeking modification. In fact, Husband also filed a petition seeking child support on October 3, 2014. We will not imply a missing provision in the contract when it is unclear "that an [such] obligation is within the contemplation of the parties at the time of the contracting or is necessary to carry out their intentions." *See Slater v. Pearle Vision Center, Inc.*, 546 A.2d 676, 679 (Pa.Super. 1988). Thus, Husband's argument must fail.

9

In the instant Petition to Enforce the Property Settlement Agreement, Wife requests the Court to enforce the Property Settlement Agreement and direct Husband to (1) pay spousal maintenance or alimony to Wife in accordance with the Agreement; and (2) pay child support to Wife in accordance with the Agreement. We will address each of Wife's arguments in turn.

It is the intent of the parties that governs the interpretation of the agreement. *Zlotziver v. Zlotziver*, 49 A.2d 779 (Pa. 1946). In Pennsylvania, the standards for interpreting contracts are well-settled:

> "When interpreting the language of a contract, the intention of the parties is a paramount consideration. In determining the intent of the parties to a written agreement, the court looks to what they have clearly expressed, for the law does not assume that the language of the contract was chosen carelessly. When interpreting agreements containing clear and unambiguous terms, we need only examine the writing itself to give effect to the parties' intent."

*Melton v. Melton*, 831 A.2d 646, 653-54 (Pa.Super. 2003) (citing *Profit Wize Marketing v. Wiest*, 812 A.2d 1270, 1274 (Pa.Super. 2002)). However, when the agreement is ambiguous and the intentions of the parties are not clear from the agreement itself, the court may take into account attendant circumstances to determine the parties' intent. *Osial v. Cook*, 803 A.2d 209, 213 (Pa.Super. 2002). When an essential term is missing from the contract, the court may imply such a term "only when it is necessary to prevent injustice and it is

10

abundantly clear that the parties intended to be bound by such term." *Kaplan v. Cablevision of Pennsylvania, Inc.*, 671 A.2d 716, 720 (Pa.Super. 1996).

Applying our well-settled principles here, the parties' Agreement evinces a clear and unambiguous intent on both parties to determine and settle their respective property rights finally and for all time. The parties also intended to be legally bound by the terms of the Agreement. Under Paragraph 7, the Agreement states:

> "The Plaintiff [Husband] shall pay spousal maintenance to the other party in the amount of $1,500.00 per month, beginning on 06/30/2012 to terminate after 84 months or on the death or remarriage of the payee, whichever comes first."

A plain reading of this provision reveals the parties' intent to have Husband pay to Wife spousal maintenance in the amount of $1,500 for 84 months subject to termination upon Wife's death or remarriage. Despite the fact that the parties did not obtain the benefit of counsel while drafting this agreement, we will not assume that the parties chose their words carelessly. Furthermore, in ascertaining the intent of the parties to a contract, "it is their outward and objective manifestations of assent, as opposed to their undisclosed and subjective intentions, that matter." *Ingressia Construction Company, Inc., v. Walsh*, 486 A.2d 478, 483 (1984). We find that Paragraph 7 contains clear and unambiguous language, which directs Husband to pay for spousal maintenance. As Wife is still alive and has not remarried, we find Paragraph 7 to be valid and enforceable. Husband's testimony at the hearing held in this

11

matter supports our finding on this issue as Husband, himself, testified that it was his understanding under the terms of their agreement that he was required to pay Wife child and spousal support for 84 months commencing as of the date Wife moved out of the former marital residence.

The Agreement also contains a valid and enforceable child support provision, which was properly modified following the parties' petitions. Under the Agreement, Paragraph 10 provides: "Plaintiff [Husband] shall pay support in the amount of $1,159 per month for the support and care of the parties' minor children." There is no provision concerning modification. In October of 2014, both parties filed petitions for child support. Following a support conference held on December 8, 2014, a support order was issued, which assessed Wife's monthly net income as $2,362.22 and Husband's monthly net income as $12,265.47. The support order directed Husband to pay $2,068.00 in child support and $206.00 in arrears. As previously discussed, agreements between Husband and Wife concerning child support do not preclude the Court from increasing the amount. *See McGough*, supra.

Accordingly, we enter the following **ORDER.**

COURT OF COMMON PLEAS OF MONROE COUNTY
FORTY-THIRD JUDICIAL DISTRICT
COMMONWEALTH OF PENNSYLVANIA

ROBERT ROMUALD ZANDROWICZ,   :    No. 389 DR 2012
                                      :    No. 2894 CV 2012

       Plaintiff             :

                                      :

      vs.                    :

                                      :

AGNIESZKA MARIA ZANDROWICZ,    :    PETITION TO ENFORCE
                                      :    MARITAL PROPERTY
       Defendant          :    SETTLEMENT AGREEMENT

## ORDER

AND NOW, this 24th day of June, 2015, upon consideration of Defendant's Petition to Enforce Marital Property Settlement Agreement, and after hearing conducted on this matter, **IT IS ORDERED** as follows:

1. Plaintiff is directed to pay Defendant spousal maintenance arrears in the amount of $51,000.00 within the next twelve months;

2. Plaintiff is directed to immediately begin paying spousal maintenance in accordance with the parties' agreement, by paying $1,500.00 per month, his first payment to occur June 30, 2015;

3. Plaintiff is directed to pay Defendant child support arrears in the amount of $32,452.00 , which arrears shall be paid at the rate of $1,500 per month until paid in full.

13

4. Plaintiff's future spousal maintenance payments, including arrears, be payable through a wage attachment to be enforced by the Domestic Relations Section.

BY THE COURT:

JENNIFER HARLACHER SIBUM, Judge

cc:    Kevin A. Hardy, Esq.
       Brandie J. Belanger, Esq.
       Domestic Relations Section

JHS2015.011

PROTHONOTARY
2015 JUN 24 AM 10 27
MONROE COUNTY, PA

14